## STATE OF HAWAII, Plaintiff-Appellant, *v.* ARTHUR FLOYD FREEDLE, Defendant-Appellee

### NO. 7546

DECEMBER 2, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY PADGETT, J.

This is an appeal by the State from an order of the circuit court dismissing an indictment for manslaughter. The question presented is whether the trial court erred in holding the evidence presented to the Grand Jury insufficient to support an indictment.

On April 25, 1979 on Diamond Head Beach Road, the decedent Aaron Yong Kim, also known as Sung Yong Kim, was given two tickets — one for illegal parking and a second for failure to have his no-fault insurance card with him — by Police Officer Woodard. Apparently, the decedent protested and an altercation developed between the decedent and the appellee Officer Freedle, in the course of which, the decedent, who was unarmed, was killed by a bullet from Officer Freedle's gun.

There was testimony before the Grand Jury that after the officers had given the tickets and were walking away, Officer Woodard said to the decedent, "Don't be smartass" and the decedent said, "Somebody call me smartass, I going kill 'em." The testimony further indicated that Officer Freedle then came back to the decedent and pushed him up against the blue and white car where they were standing facing each other. The witness Sang Wan Shin testified that Officer Freedle had grabbed the decedent by the shirt and pushed him to the blue and white car. He then testified as follows:

Q. Okay. When he did that, what happened?

A. And then I heard Aaron Kim says, "Cool. Cool," twice. But I don't know what did he say before, but I heard "Cool. Cool" twice. After about just couple seconds, I heard it, "What? What?" So I turn my head around to pay attention to that. And then the Oriental officer trying to reach for his gun. And he was so in hurry. He shake his gun about two or three times. As soon as his hand coming up, just pull.

Q. The gun went off?

A. Yeah.

The same witness testified that the decedent was holding the tickets in his left hand and that the appellee with his left hand had grabbed the decedent by his shirt. He was then asked the question:

Q. Okay. Now, where was Aaron Kim's right hand?

A. Right hand was — I think his elbow was-wen' touch the blue and white car. His back was little bit leaning to the back.

Later, he testified:

Q. Before the officer wen' grab his gun, did anybody try to grab that Oriental officer's gun?

A. No.

Q. Now, could you see if Aaron Kim was grabbing for his gun?

A. Yeah, I could see.

Q. You could see both hands of Aaron Kim?

A. Perfectly I saw his--only his left hand.

Q. And his left hand was holding the tickets?

A. Yeah.

Again, he testified:

Q. Now, did you see the officer pull out his gun?

A. Yes, I was.

Q. Did you see him point his gun?

A. Uh-huh.

Q. Where did he point his gun?

A. When — he didn't point it, but as soon as his hand coming up to the left cheek, I could see is around this close. If this is the cheek —

Q. How long is that about? four inches? three inches?

A. I no can say how many inches. Around three or four inches. Must be.

Q. And the gun went off then?

A. Uh-huh.

One of the Grand Jurors asked:

PANEL MEMBER: Could I ask him something? Could you go over his statement about when the officer reached for his gun. There was some shaking?

A. Okay. I forgot to say that. He trying to pull out his gun because the button was lock.

Q. (By Mr. Kaneshiro) You saw the button lock?

A. Yeah, because he trying to took 'um up; shake 'um.

Q. Okay. And what happened?

A. As soon as he shake about three times to pull out his gun, soon as his hands go up, was "Poom!"

In a statement given to the police by the appellee on May 2, 1979, he alluded to certain impressions which, if accepted, might mean that the decedent was struggling with him for his gun. The officer testified to having that impression. He also said he did not intend to discharge his gun.

The medical officer testified that the entry of the wound was four centimeters in front of a line that passes through the left ear canal and an inch below the level of the mouth with the bullet having traveled generally from left to right, slightly down to up and slightly front to back.

Milton Chang, a criminalist at the Honolulu Police Department Crime Laboratory testified that on the basis of

paraffin tests, there was a positive indication of a nitrate pattern on the back of the right hand of the decedent and on the back of both hands of the appellee. In addition, based on his experiments, he concluded that the weapon was about six inches from the decedent when it was fired. He indicated that either 3½ pounds or ten pounds of pressure on the trigger, depending on the position of the hammer, were necessary to fire the gun.

Appellee was indicted under § 707-702(1)(a), *Hawaii Revised Statutes* (HRS), which reads:

> A person commits the offense of man-slaughter if:
> (a) He recklessly causes the death of another person.

Reckless for the purposes of this case is defined in HRS § 702-206(3)(c) as:

> A person acts recklessly with respect to a result of his conduct when he consciously disregards a substantial and unjustifiable risk that his conduct will cause such a result.

Indictments must be based on probable cause; however, the majority rule is that an indictment will not be quashed for insufficiency of evidence (even though it will be for a total lack of evidence). 41 Am. Jur.2d *Indictments and Informations* § 239. *See also* annotations at 31 A.L.R. § 1479, 59 A.L.R. 572 and 100 L.Ed 404. The rule testing indictments in this jurisdiction, however, is stated in *State v. Okumura,* 59 Haw. 549, 551, 584 P.2d 117, 119 (1979) as follows:

> Probable cause means such a state of facts as would lead a person of ordinary caution or prudence to believe and conscientiously entertain a strong suspicion of guilt of the accused. . . . The evidence to support an indictment need not be sufficient to support a conviction.

*Accord State v. Scotland,* 58 Haw. 474, 572 P.2d 497 (1977) and *State v. O'Daniel,* 62 Haw. 518, 616 P.2d 1383 (1980).

As was pointed out in *People v. Shirley,* 78 Cal. App.3d 424, 144 Cal. Rptr. 282 (1978), every legitimate inference that may be drawn from the evidence must be drawn in favor of the indictment and neither the trial court nor the appellate court on review may substitute its judgment as to the weight of the evidence for the Grand Jury. Accordingly, the Supreme Court

of this State in *State v. Scotland, supra,* itself reviewed the transcript to see whether there was sufficient evidence to support the indictment. We follow that example.

In doing so, we hasten to point out that as *State v. Okumura, supra,* held, the test is not whether there was sufficient evidence to support a conviction; that is, the test is not whether giving the evidence adduced by the State the most favorable treatment, we conclude that reasonable minds could find the defendant guilty beyond a reasonable doubt. That matter is not before us and the application of that standard would be appropriate only if there is a trial and only after the evidence at trial has been adduced and if the defendant is convicted and appeals on that basis.

Instead, the test is whether giving the evidence its most favorable consideration in favor of the indictment, the facts are such as would lead a man of reasonable caution or prudence to believe and conscientiously entertain a strong suspicion of guilt of the accused. Suspicion is not proof. Hence, to sustain an indictment, it is not necessary to establish guilt beyond a reasonable doubt, by clear and convincing evidence or even by a preponderance of the evidence. It is not necessary to establish guilt at all. It is merely necessary to establish a situation where a strong suspicion of guilt would be believed and conscientiously entertained by a man of ordinary caution or prudence.

Based on that test, it is clear that the court below erred. Common experience teaches that the handling of a loaded pistol is not entirely without risk even under the best of conditions. Here, obviously, the Grand Jury could construe the evidence as one of a situation in which both parties were excited and possibly even angry; where immediately before the shooting, the decedent was asking the appellee to stay cool; where the appellee drew his gun hurriedly; where when he drew his gun, the appellee was shaking; where he shook the loaded gun as many as three times before it went off; where appellee brought the gun from its holstered position at appellee's waist, upward to a point some six inches from decedent's head when it was fired. The trajectory of the bullet

was from left to right, slightly upwards and slightly toward the back. There was no evidence indicating that the decedent was armed. There was evidence that the decedent was not resisting the appellee and was not trying to seize the gun. It flies in the face of reason to say that the grand jurors, as men of ordinary caution, could not have believed and conscientiously entertained a strong suspicion that the appellee, in drawing his firearm under these circumstances, consciously disregarded a substantial and unjustifiable risk that his conduct would cause the gun to discharge and thus, cause the death of the decedent. Whether that suspicion can be turned into proof is a matter for trial.

Appellee has argued that even if the trial court erred in his reasoning in striking down the indictment, nevertheless, it should be stricken because the prosecutor did not define "recklessly" for the Grand Jury as it is defined in § 702-206(3)(c) of the *Hawaii Revised Statutes*. The reasoning is that in the ordinary dictionary recklessly and negligently are treated as synonyms and that possibly the Grand Jury mistakenly looked on them in that way. The only authority cited in support of this point is *State v. Joao*, 53 Haw. 226, 491 P.2d 1089 (1971). That case is not apposite. It is one involving prejudicial remarks to the jury by the prosecutor which invaded the province of the Grand Jury or tended to induce action other than that which the jurors in their uninfluenced judgment would have deemed warranted on the evidence fairly presented.

The general rule is that an indictment is not vitiated by the court's failure to instruct the Grand Jury or even by the giving of an erroneous instruction, in the absence of a statute compelling the court to instruct the Grand Jury. 41 Am. Jur.2d *Indictments and Informations* § 253. The Hawaii statute on the subject is § 612-16(d), HRS, which reads as follows:

> The grand jury, being impaneled and sworn, shall be charged by the court. In doing so, the court shall give them such information as it may deem proper as to their duties and as to the law pertaining to such cases as may come before them. The court may further charge the grand jury from time to time, as it may deem necessary.

In this case, the court gave the usual general instructions to the Grand Jury. They are incorporated in the record. There is no authority for the proposition that the court was compelled to give the legal definition of recklessly appearing in the criminal code to the Grand Jury.

As to the prosecutor, the Honolulu Charter provides in § 8-105(d) that:

> The prosecuting attorney shall: . . . draw all indictments and attend before and give advice to the grand jury whenever cases are presented to it for its consideration. . . .

In *State v. Scotland, supra,* 58 Haw. at 478, the court said:

> We know of no rule of law that mandates the prosecutor to give to the grand jury an instruction to disregard improper testimony in a case such as the one before us.

In *State v. Bell,* 60 Haw. 241, 589 P.2d 517 (1978), the Supreme Court of Hawaii stated:

> We further reject Hisaw's attempt to construe § 6-703(d) of the Charter of the City and County of Honolulu (as revised) as a valid requirement that the prosecutor must instruct the grand jury regarding possible defenses. Section 6-703(d) which provides that the prosecuting attorney shall "attend before and give advice to the grand jury whenever cases are presented to it for its consideration", merely describes one of the city prosecutor's general functions and cannot affect the manner in which the grand jury investigatory and indictment process is to be conducted.

60 Haw. at 251. Section 6-703(d) is now § 8-105(d) of the Honolulu Charter previously quoted. It is clear that there is no duty laid upon the prosecutor to have given an instruction as to the meaning of the word recklessly in the *Hawaii Penal Code.*

Accordingly, appellee's position is without merit. Reversed and remanded for further proceedings consistent herewith.

*Keith M. Kaneshiro (Michael J. McGuigan* on the brief), Deputy Prosecuting Attorney, for plaintiff-appellant.

*David C. Schutter (Judith Ann Pavey* on the brief) for defendant-appellee.