STATE OF HAWAII, Plaintiff-Appellee, *v.* PATRICK KEITH KELLY, Defendant-Appellant

NO. 9850

(CRIMINAL NO. 59494)

OCTOBER 21, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

*OPINION OF THE COURT BY WAKATSUKI, J.*

Defendant-Appellant Patrick Kelly was convicted of promoting a dangerous drug in the first degree in violation of Hawaii Revised Statutes (HRS) § 712-1241(1)(a)(i). The trial court denied Kelly's motion to suppress evidence on grounds that exigent circumstances existed when Officer McCarthy, without a warrant, entered Kelly's

residence to recover a photo album containing cocaine in the front cover. We reverse.

I.

The issues in this appeal are: (1) whether the warrantless installation of a transponder, an electronic beeper device more commonly known as a "beeper," into the back cover of the photo album is a "search" or "seizure" that violates the fourth amendment of the United States Constitution and article I, section 7 of the Hawaii Constitution; (2) whether the warrantless monitoring of the beeper located in the private residence of Kelly to determine the location and the opening of the photo album containing cocaine violates the fourth amendment of the United States Constitution and article I, section 7 of the Hawaii Constitution; and (3) whether exigent circumstances justified the entry of Kelly's residence, without a warrant, to search and seize the album containing cocaine and other incriminating evidence.

II.

A package shipped from Peru and addressed to King Kelly, GBSA, Room D-306, College of Business Administration, 2404 Maile Way, Honolulu, Hawaii 96822, arrived at the Honolulu International Airport mail room on September 9, 1983. The package was subjected to a dog sniff. The trained dog indicated a potential contraband substance in the package.[1] Customs Officer Jerome Tomaino opened the package and found a photo album that had bulges in the front and back cover. He inserted a knife in the back cover and a white powdery substance adhered to the blade. The substance was subsequently tested and positively identified as cocaine.[2] Tomaino notified the Drug Enforcement

---

[1] The use of a trained dog to detect narcotics is not a search where the package was not singled out but for the dog. *State v. Snitkin,* 67 Haw. 168, 681 P.2d 980 (1984).

[2] Common carriers or custom officers have a common law right to inspect packages they accept for shipment based on a duty to refrain from carrying contraband. *Illinois v. Andreas,* 463 U.S. 765, 769 n.1, 103 S. Ct. 3319, 3322 n.1, 77 L. Ed. 2d 1003, 1009 n.1 (1983).

Administration (DEA) task force of the cocaine discovery. The task force consisted of representatives from U.S. Customs, DEA, and the Honolulu Police Department (HPD).

Ten days after the package was confiscated by Tomaino, DEA agents cut open the back cover of the album and removed four out of five packets of cocaine. The agents replaced the four packets of cocaine with four packets of fake cocaine. Also inserted in the back cover of the album was a beeper which would enable the agents to monitor the location of the package and to learn when the back cover of the album was being opened. The agents made a "controlled delivery" of the package on the same day to Kelly at the University of Hawaii School of Business. Kelly signed for the package and went upstairs to a conference room. He then exited from the building carrying a knapsack which emitted signals from the beeper.

The officers followed Kelly to his residence, commenced surveillance of the house, and monitored the beeper signals. After five to seven minutes, the signals from the beeper changed to a droning tone indicating that the back cover of the album had been opened.

Detective Kim and Officer Huston, without identifying themselves, knocked on the front door and asked to speak to Kelly. One of Kelly's housemates, John Riddel, answered the door and said he would check to see if Kelly was home. He shut the door and conversed with someone inside. Riddel opened the door to say Kelly was not home.

Meanwhile, Officer Aiu reported to Kim that he had observed Kelly through a back window, apparently fumbling with something. Detective Kim and Officer Aiu went to the back of the house to see if Defendant was still visible. Detective Kim testified that from the back door he heard fast footsteps and a toilet flushing.

Officer Kim then told the other officers to enter the house from the front door while he tried the back door which was locked. Officers McCarthy and Huston knocked on the front door and when Timothy Hayes appeared, they asked to speak to Kelly. Hayes said he would check if Kelly was at home whereupon Officer McCarthy identified himself as a police officer and entered the house. Officer McCarthy testified that at that point, he heard footsteps and a toilet flushing from the second floor. He ascended the stairway and observed a bathroom door ajar. He pushed the door open and observed Kelly lowering the toilet seat cover with his left hand while holding the open album in his right hand. McCarthy recovered the album from Kelly and noticed the

back cover of the album had been torn open exposing the beeper. The fake cocaine was missing and could not be found in the bathroom. McCarthy also recovered a black nylon backpack, cellophane wrapping and a manila envelope. Kelly was then arrested. Thereafter, McCarthy took the album back to the DEA task force office at the airport and opened the front cover of the album which contained cocaine.

## III.

### A.

In *United States v. Knotts,* 460 U.S. 276, 103 S. Ct. 1081, 75 L. Ed. 2d 55 (1983), the United States Supreme Court held that the warrantless tracking of the movements of an automobile containing a drum of chloroform by monitoring a beeper attached to the drum was not an illegal surveillance prohibited under the fourth amendment of the United States Constitution. "A person travelling in an automobile on a public thoroughfare has no reasonable expectation of privacy in his movements from one place to another." 460 U.S. at 281, 103 S. Ct. at 1085, 75 L. Ed. 2d at 62. The warrantless installation of the beeper took place with the consent of the seller prior to sale and delivery of the drum of chloroform to the defendant, and the defendant did not challenge the warrantless installation in this case. 460 U.S. at 278-79, 103 S. Ct. at 1087-88, 75 L. Ed. 2d at 60.

In *United States v. Karo,* 468 U.S. 705, 104 S. Ct. 3296, 82 L. Ed. 2d 530 (1984), the United States Supreme Court held that the warrantless installation of a beeper in a drum of ether for the purpose of tracking the drum's movement did not violate the fourth amendment of the United States Constitution in that the installation of the beeper was made in a drum originally belonging to the Drug Enforcement Agency. *See also United States v. Brock,* 667 F.2d 1311, 1319 n.4 (9th Cir. 1982). Under these circumstances, the defendants had no legitimate and reasonable expectation of privacy in the drum. Even without substitution of the DEA's drum for one of the drums in the shipment sold to the defendants, the Court held consent of the owner in possession of the drum was sufficient to validate installation of the beeper. *Karo,* 468 U.S. at 711, 104 S. Ct. at 3301, 82 L. Ed. 2d at 539.

The transfer of the drum thereafter was determined not to be a "search" because at the time of the transfer the beeper was not moni-

tored, and therefore, did not give any information infringing upon defendants' expectation of privacy. Similarly, the transfer did not constitute a "seizure" because it was not a "meaningful" interference with defendants' possessory interest. At best, the Court concluded that the presence of the beeper was a mere "technical trespass," as no material information was given by the beeper at the time of the transfer. *Karo,* 468 U.S. at 712, 104 S. Ct. at 3302, 82 L. Ed. 2d at 539-40.

The Court held, however, that the monitoring of a beeper to determine the location of the drum in a private residence required a warrant. The Court reasoned that any information obtained through the beeper from a private residence but unavailable through visual surveillance violated defendants' legitimate and reasonable expectation of privacy under the fourth amendment. *Karo,* 468 U.S. at 714, 104 S. Ct. at 3303, 82 L. Ed. 2d at 541.

### B.

Under the material facts of this case distinguishable from the facts of *Knotts* and *Karo,* we hold that the warrantless seizure of the album for ten days for the purpose of installing the beeper in the back cover of the photo album by the government agents constituted an unreasonable seizure of property violating the fourth amendment of the United States Constitution. *United States v. Van Leeuwen,* 397 U.S. 249, 252, 90 S. Ct. 1029, 1032, 25 L. Ed. 2d 282, 285 (1970); *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S. Ct. 1652, 1656, 80 L. Ed. 2d 85, 94 (1984).

Unlike *Knotts* (a beeper was attached to a drum of chloroform) and *Karo* (a beeper was inserted in a drum of ether), where the government agents had full control, dominion, and possessory interest in the drums before the installations of the beepers and before the defendants obtained possession of the drums through a purchase, Kelly, as the addressee of the mailed package, had a possessory interest in the photo album during the time the album was in mail transit. When the photo album addressed to Kelly was dropped in the mail, Kelly had a legitimate and reasonable expectation that his possessory interest in the photo album would not be tampered or interfered with by anyone. A possessory interest has long been recognized as the right to use and dispose of property as the owner or possessor sees fit, and to exclude all the world from it. *Karo,* 468 U.S. at 729, 104 S. Ct. at 3311, 82 L. Ed. 2d

at 550-51 (Stevens, J., Brennan, J. and Marshall, J., concurring in part and dissenting in part); *cf. People v. Oates,* ___Colo.___, 698 P.2d 811, 817 (1985).

Here, the government agents, without warrant, seized and asserted control and dominion over the album for ten days for the purpose of installing the beeper in the back cover, interfering with Kelly's legitimate possessory interest to the album for an unreasonable length of time. *Van Leeuwen* at 252, 90 S. Ct. at 1032, 25 L. Ed. 2d at 285. Furthermore, the agents had sufficient probable cause (they had already discovered cocaine in the back cover) and ample time (they had seized and held the album for ten days before deciding to install the beeper and make a controlled delivery of the package) to obtain a warrant for the seizure of the album to insert the beeper in the cover and to monitor the beeper as well.

Even though a plausible argument may be made that the material facts in this case and in *Karo* are not dissimilar, and therefore, the holding in *Karo* should apply in that the warrantless installation of the beeper in the back cover of the album is not an unreasonable "seizure" of property, but a justifiable "search" under the fourth amendment of the United States Constitution, we, nevertheless, hold that the warrantless seizure and unreasonable detention of the album for the purpose of installing the beeper violates article I, section 7 of the Hawaii Constitution.[3] We interpret article I, section 7 of the Hawaii Constitution as giving our citizens a broad protection against unreasonable seizures of private property by government agents, subject to the exception of the exigent circumstances rule. Here, the government agents seized, detained and exercised full control and dominion over the album for ten days, without justification and without the existence of any exigent circumstances.

---

[3] Article I, section 7 of the Hawaii Constitution reads:

Th. right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

## C.

The State argues that lack of particularity as to the place or person to be searched by the beeper prevented them from obtaining a warrant for the beeper. However, the United States Supreme Court has held that difficulty in satisfying the particularity requirement will not excuse the failure to procure a warrant. Information describing the object into which a beeper is to be placed, the circumstances that led the officers to want to install the beeper and the length of time for the requested surveillance will suffice to permit issuance of a warrant for beeper installation and surveillance. *Karo,* 468 U.S. at 718, 104 S. Ct. at 3305, 82 L. Ed. 2d at 543. *See also State v. Hendricks,* 43 N.C. App. 245, 258 S.E.2d 872, 881 (1979).

## IV.

In view of our holding that the album was unreasonably seized in violation of the fourth amendment and article I, section 7 of the Hawaii Constitution, we need not determine whether the warrantless entry of Kelly's residence by Officer McCarthy was justified due to the existence of exigent circumstances.

We hold that the cocaine discovered in the front cover of the album and other incriminating evidence obtained from Kelly's residence are the fruits of an unreasonable seizure of the album which violated the fourth amendment of the United States Constitution and article I, section 7 of the Hawaii Constitution.

The trial court's denial of defendant's motion to suppress is reversed.

*Edward K. Harada (Richard W. Pollack* with him on the briefs), Deputy Public Defender, for defendant-appellant.

*Pamela Tamashiro,* Deputy Prosecuting Attorney, for plaintiff-appellee.