**STATE OF HAWAII**, Petitioner–Appellee, v. **MARK SIDNEY REED**, Respondent–Appellant

NO. 12175

(CR. NO. 19P OF 3/23/87, HPD NO. R80259)
(CR. NO. 20P OF 3/23/87, HPD NO. R80258)

OCTOBER 21, 1988

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

Petitioner–Appellee State of Hawaii (State) seeks review of the Intermediate Court of Appeals (ICA) memorandum opinion reversing the convictions against Respondent–Appellant Mark Sidney Reed (Reed). The trial court had refused to suppress the incriminating evidence against Reed and had convicted him for the Illegal Possession of a Switchblade Knife plus the Third–Degree Promotion of the Harmful Drug Valium in violation of Hawaii Revised Statutes (HRS) §§ 134–52 (1985) and 712–1246 (1985), respectively.[1] The ICA majority opinion had reversed ruling that the evidence had been illegally obtained by an overly broad

---

[1]The statutes provide:

[§ 134–52 Switchblade knives; prohibitions; penalty.] Whoever knowingly manufactures, sells, transfers, possesses, or transports in the State any switchblade knife, being any knife having a blade which opens automatically (1) by hand pressure applied to a button or other device in the

pat–down search. We disagree with the ICA majority decision and instead agree with the dissenting opinion of Judge Burns that 1) the switchblade knife was properly seized; but 2) further proceedings on remand are required to determine the legality of the Valium seizure.

## I.

## BACKGROUND FACTS

The facts are not disputed:

At approximately 4:20 a.m. on April 30, 1986, Honolulu police officer Michael DeAguiar (DeAguiar) saw Defendant apparently throw coffee on a woman standing on the sidewalk of Hotel Street. The woman then began "screaming" and swearing at Defendant. DeAguiar stopped Defendant and asked him why he had done what he did. Defendant gave no reason for his action and DeAguiar asked Defendant for identification. Upon receiving Defendant's identification, DeAguiar called the police station to see if any warrant was outstanding against Defendant. DeAguiar was informed there was a warrant for Defendant's arrest and he arrested Defendant. *DeAguiar then patted Defendant down and recovered the switchblade knife and a plastic Tylenol bottle containing several pills which DeAguiar could see, without opening the bottle, were blue in color and imprinted with the letter "V".* At that time Defendant was arrested for possession of the knife. When Defendant was taken to the police station, DeAguiar compared the blue pills with pictures in a "Physician's Manual" and concluded that the pills were valium. Defendant was arrested on the drug charge. The pills were removed from the

---

handle of the knife, or (2) by operation of inertia, gravity, or both, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

§ 712–1246 **Promoting a harmful drug in the third degree.** (1) A person commits the offense of promoting a harmful drug in the third degree if he knowingly possesses any harmful drug in any amount.

(2) Promoting a harmful drug in the third degree is a misdemeanor.

bottle by DeAguiar without a search warrant, counted, and returned to the bottle. The pills were later analyzed by police chemists as valium.

Defendant's pre–trial motion to suppress the knife and the pills was denied. The parties then incorporated DeAguiar's and Defendant's suppression hearing testimony for purposes of trial, stipulated that the pills had been analyzed as valium, and submitted the case to the court to decide the substantive issues. The court found Defendant guilty on both counts and Defendant appealed.

*State v. Reed*, No. 12175, slip op. at 1–2 (Haw. App. Mar. 29, 1988) (mem.)(emphasis added).

On appeal, the ICA majority held that State failed to point to specific, articulable facts to justify the pat–down search by Honolulu Police Department Officer Michael DeAguiar (Officer DeAguiar). *Id.* at 3. Because the record did "not disclose the offense for which the [outstanding arrest] warrant was issued," the ICA majority explained that it could not "say that the offense for which [Reed] was arrested was one which, per se, would justify the 'pat–down' search." *Id.* at 4. Finally, the majority noted that:

DeAguiar did not testify to anything that caused him to believe that Defendant was armed, concealing fruits of crime on his person, or was attempting to escape. Defendant was co-operative at all times, and DeAguiar gave no reason for the search other than Defendant's arrest. Consequently, *the record is utterly devoid of "specific and articulable facts," and the search was unreasonable.* The trial court erred in denying Defendant's motion to suppress.

The State's argument that the time and place of the arrest provided exigent circumstances is without merit. Even given the time and place, the evidence does not show that Defendant's conduct was threatening, that the police had any information that Defendant was in possession of any weapons or contraband, that he had a confederate, or that he was trying or would try to escape.

*Id.* at 4–5 (emphasis added).

While opining that Hawaii caselaw is ambiguous over whether an arresting police officer may automatically conduct a pat–down search of

an arrestee for weapons, escape instrumentalities, or contraband, the ICA dissenting opinion determined that no valid reason justified exposing the police officers to the reasonably avoidable risk of being harmed by lawfully arrested suspects:

> *[I]t is per se reasonable* for an arresting officer (1) to conduct a pat–down search of the arrestee for weapons and property that can be used to facilitate escape, (2) to temporarily seize for examination any items which, as a result of the pat–down search, the arresting officer has probable cause to believe are weapons or property that can be used to facilitate escape or containers of weapons or property that can be used to facilitate escape, and (3) to permanently seize any items which, as a result of the examination, reveal themselves to be weapons, property that can be used to facilitate escape, or contraband or containers of weapons or property that can be used to facilitate escape.

*Id.*, dissenting op. at 3 (as amended March 31, 1988) (emphasis added).

The dissenting opinion thus concluded that the pat–down search, permanent seizure of the switchblade knife, plus the feeling of the plastic Tylenol bottle in Reed's left front pocket were valid. *Id.* But because the parties and the trial court never addressed the underlying facts on whether Officer DeAguiar had probable cause to believe what he felt was a weapon, escape instrumentality, or contraband, a remand was necessary to decide this issue. *Id.* at 3–4.

We subsequently accepted State's timely certiorari petition to resolve the controversy.

## II.

## QUESTIONS PRESENTED

I. Whether the ICA majority erred by ruling that the trial court should have suppressed the switchblade knife? YES.

II. Whether the ICA majority erred by holding that the trial court ought to have suppressed the Valium pills? YES.

Because of our responses to these points, we do not address the other issues posed by the parties.

III.

## SWITCHBLADE KNIFE SUPPRESSION

State maintains that the ICA dissenting opinion correctly interpreted the governing Hawaii caselaw to permit a pat–down search of any arrestee prior to the transport for booking at the police station. Reed counters that 1) a per se rule allowing a protective pat–down search for weapons, escape instrumentalities, or contraband in every arrest should not be adopted; and 2) the instant pat–down frisk by Officer DeAguiar clearly exceeded the limited scope of a valid examination anyway.

Here, no real question exists that Officer DeAguiar possessed reasonable grounds to detain Reed for investigation, after witnessing the apparent assault on the woman, under the rule established in *Terry v. Ohio*, 392 U.S. 1 (1968). *See State v. Kim*, 68 Haw. 286, 711 P.2d 1291 (1985).[2] We must therefore focus on the legality of the pat–down search based on the principle that warrantless searches are presumed to be unreasonable unless justified by a specific exception to the warrant requirement. *State v. Ritte*, 68 Haw. 253, 710 P.2d 1197 (1985); *see State v. Biggar*, 68 Haw. 404, 716 P.2d 493 (1986).

We begin our discussion with *State v. Enos*, 68 Haw. 509, 720 P.2d 1012 (1986), where the investigating police officer arrested the defendant for driving under the influence of intoxicating liquor pursuant to HRS § 291–4(a) (Supp. 1984), conducted a pat–down frisk, felt what appeared to be cellophane packets in the defendant's left front pants pocket, *suspected* that the packets *might* contain contraband based on prior narcotics investigations, removed the pocket contents, discovered cocaine, and arrested the defendant for the third–degree promotion of dangerous drugs under HRS § 712–1243 (1976). On appeal, we reversed the drug conviction ruling that the pat–down search was too expansive and unjustified by the circumstances:

---

[2] Although the female victim was on the scene when Officer DeAguiar stopped Reed, she left the vicinity shortly thereafter. She was never named so her identity and whereabouts remain unknown. *See* Transcript of March 23, 1987 at 8, 16. Her absence, though, does not affect the analysis of this case.

We have repeatedly upheld the right of an officer making an arrest to take reasonable and appropriate steps to protect himself from possible weapons to which the arrestee may have access. *State v. Barrett*, 67 Haw. 650, 701 P.2d 1277 (1985); *State v. Ortiz*, 67 Haw. 181, 683 P.2d 822 (1984); *State v. Kaluna*, [55 Haw. 361, 520 P.2d 51 (1974)]. We think it clear that on an arrest for drunken driving, *it is per se reasonable for an officer to conduct a pat–down for weapons.*

Here, the officer found no weapons. On this record, there was nothing to indicate that there were, concealed on the person of appellant, any fruits or instrumentalities of the crime of drunken driving. Given the finding by the court, which was in accord with the testimony, that *the officer was without any prior knowledge or suspicion of the existence of contraband*, the warrantless search and seizure, beyond the pat–down for weapons, violated appellant's rights under the Constitution of the State of Hawaii. The order denying a suppression of the four cellophane packets was error.

*Enos*, 68 Haw. at 511, 720 P.2d at 1014 (emphasis added).

*Enos* explicitly held that, while a pat–down search of an arrestee is per se proper to reveal any weapons, escape instrumentalities, or contraband, the search there went beyond the permissible scope because the investigating police officer had no basis to intrude into the defendant's pocket. *Id.* at 511–12, 720 P.2d at 1014–15. Merely conjecturing that the defendant might have drugs in the cellophane packets was not enough. *Cf. State v. Kuba*, 68 Haw. 184, 706 P.2d 1305 (1985).

Similarly in *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1974), the supervising police officer administered a simultaneous search incident to arrest plus preincarceration search, ordered the defendant to strip down to her underwear, accepted a folded piece of tissue paper from the defendant, opened the tissue *although having no idea what was inside*, and discovered the barbiturate Seconal. We affirmed the order suppressing the barbiturate where the search, motivated by curiosity and not any legitimate purpose, exceeded the bounds necessary to detect weapons, escape instrumentalities, or contraband. *Id.* at 370–71, 520 P.2d at 59 (citing *State v. Hanawahine*, 50 Haw. 461, 464, 443 P.2d 149, 151–52 (1968)). We also emphasized that once the tissue paper was in the police officer's exclusive control, "there was no further danger that the defendant could" use the

contents to perpetrate some harm. *Kaluna*, 55 Haw. at 371, 520 P.2d at 59.

The searches in *Enos* and *Kaluna* were thus improper because the investigating police officers lacked any legal grounds to invade the defendants' privacy. Speculation or curiosity cannot provide the sole basis to legitimize warrantless searches or seizures. *Cf. State v. Jensen*, 69 Haw. ___, 750 P.2d 932 (1988) (per curiam); *State v. Jerome*, 69 Haw. ___, 736 P.2d 438 (1987).

In the present case, by contrast, Officer DeAguiar did not engage in a general exploration of Reed's pockets but instead correctly made a limited frisk, felt the knife in Reed's right rear pants pocket, and extracted the weapon. *See* Transcript of March 23, 1987 at 8. Notwithstanding that Officer DeAguiar had no specific suspicion that Reed was armed, we view the warrantless, limited pat–down search after a valid arrest for weapons, escape instrumentalities, or contraband as reasonable and necessary for the arresting police officer's safety. *See State v. Clark*, 65 Haw. 488, 654 P.2d 355 (1982); *cf. State v. Ortiz*, 67 Haw. 181, 683 P.2d 822 (1984). This type of search is not dependent on the nature of the crime or the circumstances of the arrest.

Relying on *State v. Rosborough*, 62 Haw. 238, 615 P.2d 84 (1980), the ICA majority, however, ruled that the pat–down search was improper. In *Rosborough*, the investigating police officers arrested the defendant for drug trafficking, seized his footlocker (which was known to contain marijuana), frisked the defendant, seized a safety matchbox from the defendant's right front pants pocket, opened the matchbox to discover marijuana, and conducted a warrantless search of the footlocker to find more marijuana. *Id.* at 239–40, 615 P.2d at 85. We affirmed the order suppressing all the marijuana since 1) no exigency excused the failure to obtain warrants once the police gained exclusive control of the containers and the defendant had no possibility of getting access; plus 2) no information existed that the matchbox concealed marijuana, so the search incident to arrest exception was inapplicable. *Id.* at 243–45, 615 P.2d at 88.

*Rosborough* was premised on the inexcusable mistake in not acquiring warrants although the police officers had eliminated any danger by isolating the defendant from the containers such that no exigency mandated immediate warrantless searches. Although the closed containers could have been confiscated for safekeeping, search warrants were re-

quired to look through them. *See State v. Wong*, 68 Haw. 221, 708 P.2d 825 (1985) (per curiam).

*Rosborough* is hence inapplicable to the switchblade knife which was not a closed container opened without a warrant, was within Reed's grasp, and so was lawfully seized. But we emphatically reiterate, however, that we will not condone any impermissibly broad, unreasonable, warrantless searches of arrestees or their possessions which 1) are not supported by specific, recognized exceptions to the warrant requirement; or 2) constitute unlawful attempts to circumvent the controlling constitutional protections. *State v. Wiley*, 69 Haw. ___, 752 P.2d 102 (1988); *see also State v. Kelly*, 68 Haw. 213, 708 P.2d 820 (1985).

We thus hold that it is per se reasonable for the arresting police officers to conduct a warrantless, limited pat–down search of an arrestee's person and the area under the arrestee's immediate control for weapons, escape instrumentalities, or contraband.

## IV.

## VALIUM PILLS SUPPRESSION

We next turn to the matter of the Valium pills in the Tylenol bottle. State advances that, because the Tylenol bottle could have held a weapon, Officer DeAguiar appropriately removed the container from Reed's person. Reed replies that Officer DeAguiar went beyond the legitimate extent of a protective weapons frisk.

We once more stress that the pat–down frisk, as a form of the search incident to a valid arrest, must 1) be confined to a search of the arrestee's person or the area within his or her immediate reach for weapons, escape instrumentalities, or contraband; and 2) balance the weighty government interest in police safety against the arrestee's right to be free from unreasonable government intrusion. *State v. Barrett*, 67 Haw. 650, 701 P.2d 1277 (1985); *see State v. Goodwin*, 7 Haw. App. ___, 752 P.2d 598 (1988).

Officer DeAguiar testified at the suppression hearing as follows:

Q Now, what caused you to arrest the defendant, or charge the defendant with possession of valium, or promoting harmful drugs?

A When I recovered from his left front pocket the Tylenol bottle, I could see the medicine or the pills inside the bottle. And they were blue with the letter V on it. So I knew from my knowledge that it did not look like Tylenol. I didn't know what kind that was. When I got to the station, I checked through the descriptions [in the Physician's Manual] there, and there were pills which looked to be the same as the ones inside the bottle, and it said valium. So I informed my supervisor, and we charged him for valium at that time at the desk.

. . . .

Q And when you did the patdown search, the patdown search was for weapons, and you mentioned something else?

A Contraband.

Q So you knew at that time that he would be carrying contraband, is that right?

A No.

Transcript of May 23, 1987 at 9, 20–21.

But as the ICA dissenting opinion accurately discerned, the record is not complete with regard to Officer DeAguiar's belief when sensing the Tylenol bottle:

My holding would validate the pat–down search, the permanent seizure of the switchblade knife, and the feeling of the plastic Tylenol bottle when it was in Appellant's "left front pocket". It would validate the temporary seizure of, removal from Appellant's pocket, and examination of the unopened plastic Tylenol bottle only if, *when Officer DeAguiar legitimately felt the bottle when it was in Appellant's pocket, he had probable cause to believe that what he felt was or contained a weapon or property that could have been used to facilitate Appellant's escape.* If Officer DeAguiar had probable cause to believe that what he felt was or contained contraband other than a weapon or property that could have been used to facilitate Appellant's escape, then he was not authorized to temporarily seize what he felt, to remove it from Appellant's pocket, or to examine it.

*Reed*, dissenting op. at 3–4 (emphasis added).

We agree that additional factfinding is necessary to resolve this ambiguity. We accordingly direct the trial court on remand to specifically

take more evidence and issue findings plus conclusions on this matter. *See State v. Anderson*, 67 Haw. 513, 693 P.2d 1029 (1985).

And should the seizure of the Tylenol bottle be deemed proper, we further charge the trial court to inquire into the particular circumstances surrounding the initial warrantless opening of the bottle and whether the inventory search exception applies. *See State v. Ching*, 67 Haw. 107, 678 P.2d 1088 (1984).

## V.

## CONCLUSION

Based on the foregoing reasoning and pursuant to the ICA dissenting opinion, we hereby affirm the switchblade knife possession conviction, vacate the conviction for the promotion of drugs, and remand the case for proceedings consistent with this decision plus the rule governing the per se reasonableness of warrantless searches incident to a valid arrest. *See State v. Paahana*, 66 Haw. 499, 666 P.2d 592 (1983).

*Lila B. LeDuc*, Deputy Prosecuting Attorney, on the writ for Petitioner.

*Susan Barr*, Deputy Public Defender, on the supplemental brief, for Respondent.