702 A.2d 477

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
JAMES E. YOUNGER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted October 7, 1997—Decided October 20, 1997.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*Ivelisse Torres*, Public Defender, attorney for appellant (*Stephen A. Caruso*, Assistant Deputy Public Defender, of counsel and on the brief).

*Peter Verniero*, Attorney General, attorney for respondent (*Wendy Alice Way*, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Following the denial of his motion to suppress evidence seized during a warrantless search, defendant James E. Younger was tried and found guilty by a jury of the third-degree crime of possession of heroin, *N.J.S.A.* 2C:35–10a, and the separately charged third-degree crime of possession of that heroin within 1,000 feet of a school, *N.J.S.A.* 2C:35–10a. The judge, imposing an extended term, sentenced defendant to a ten-year prison term subject to a five-year parole ineligibility term. Defendant appeals, contending that his suppression motion was denied in error and that reversible error was committed at trial. Concluding that the court erred in denying the motion to suppress, we reverse the judgment of conviction.

The Fourth Amendment issue before us arises out of the Prevention of Domestic Violence Act of 1991, *N.J.S.A.* 2C:25–17 to 33, and, more particularly, *N.J.S.A.* 2C:25–21d, which authorizes a law enforcement officer having probable cause to believe that an act of domestic violence has been committed to

(a) question persons present to determine whether there are weapons on the premises; and

(b) upon observing or learning that a weapon is present on the premises [to] seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury.

The question raised is the scope of the search that the law enforcement officer may undertake in order to find the weapon that the victim of domestic violence reports to have been in the possession of the person committing the act. We address this question in the context of the evidence adduced at this suppression hearing.

According to his testimony, Freehold patrolman Schulz was dispatched to the home of defendant's grandmother, Elizabeth Younger, during the early hours of November 4, 1994, to investigate a possible act of domestic violence. On his arrival, he determined that Mrs. Younger was the apparent victim, and he placed defendant in his police car to separate him from Mrs. Younger, and "for his own protection," as a crowd had apparently gathered. Mrs. Younger reported to the officer that defendant had punched her in the stomach and had struck her in the head, and Schulz could see a swelling on her forehead. Mrs. Younger also reported that defendant was waving a knife around, threatening to kill her, and that he had a gun in a brown paper bag, which she described as similar to the officer's holstered duty weapon. There were three young children in the house as well, Mrs. Younger's grandchildren who lived with her, one of whom also assertedly reported to the officer that defendant, her uncle, had a gun. Patrolman Schulz then placed defendant, still in the police car, under arrest for domestic violence, and returned to the house to continue his interview with Mrs. Younger. During the course of the interview, she apparently signed, although she cannot read

or write, a form provided by the officer explaining the rights of victims of domestic violence. Patrolman Schulz then transported defendant to the police station after arranging for his partner, Patrolman Shamrock, and another officer, Patrolman Beaver, to search for the gun.

According to the testimony of Patrolman Beaver, when he asked Mrs. Younger where the gun might be, she led them to the bedroom where she said that defendant had been sleeping. As we understand the record, the room was actually the bedroom of Mrs. Younger's eleven-year-old granddaughter, who had apparently given it up to her uncle, defendant, when he had arrived at the house with his belongings in plastic bags shortly before this act of domestic violence was allegedly committed. In any event, the officers undertook an intensive search of the room and its contents, at first finding nothing incriminating or illegal. Ultimately, Patrolman Beaver noticed a closed pliable vinyl change purse, about three inches by two inches, lying under one of the plastic bags of clothing he had moved. He asserted that he also noticed some sort of identity card sticking out of it. Although he conceded that the purse obviously could not have contained a gun and that anything sharp or hard that might have been inside it could have been felt without opening it, he nevertheless did open it for two reasons: first, to see to whom the identity card belonged, and second, to see if there was any ammunition in the purse. It contained no ammunition. It did contain nine glassine envelopes in which there was a white powdery substance. Patrolman Beaver believed that what he had found was a deck of heroin, and, indeed, the substance proved to be heroin of a total weight of 2.12 grams. That heroin was the gravamen of the possession charges against defendant.

Testifying at the suppression hearing for the defense were Mrs. Younger and her eleven-year-old granddaughter. The import of the granddaughter's testimony was that she had never seen her uncle with a gun and had not told the officers that he had one. She also testified that just before these events, she had placed her

uncle's photo identification card, which Patrolman Beaver had testified to have seen sticking out of the change purse, on the bible that lay on the top of her dresser. Mrs. Younger denied that any act of domestic violence had taken place. She testified that she had not called the police and did not know who had. She also denied that defendant had had a gun. Finally, she testified that all that the officers had asked her after defendant was taken away was where he kept his clothes. When she pointed to the bedroom, they simply walked into that room and started to search it.

The trial judge, concluding that defendant's family was trying to protect him, credited the police testimony. We have no reason, based on this record, not to defer to his factual findings, namely, that the search had taken place in the circumstances as testified to by the officers. *See, e.g., Rova Farms Resort v. Investors Ins. Co.,* 65 *N.J.* 474, 483–484, 323 *A.*2d 495 (1974). We, therefore, consider the Fourth Amendment issue in the context of the police version of the events.

The judge was satisfied that the warrantless search of the granddaughter's bedroom culminating in the opening of the little change purse was justified both by the terms of the Domestic Violence statute we have quoted and by Mrs. Younger's consent to the search. We reject both of these rationales.

We address first the consent issue. It is well settled that so long as the State bears its burden of proving that the person purportedly consenting to a search had knowledge of his choice in the matter, a search conducted after a voluntary consent, either express or implied, is valid. *Schneckloth v. Bustamonte,* 412 *U.S.* 218, 219, 93 *S.Ct.* 2041, 2043, 36 *L.Ed.*2d 854, 858 (1973); *State v. Koedatich,* 112 *N.J.* 225, 262, 548 *A.*2d 939 (1988), *cert. denied,* 488 *U.S.* 1017, 109 *S.Ct.* 813, 102 *L. Ed.*2d 803 (1989). *See also State v. Sugar,* 108 *N.J.* 151, 166, 527 *A.*2d 1377 (1987); *State v. Johnson,* 68 *N.J.* 349, 353–354, 346 *A.*2d 66 (1975). It is also well settled that a person having a right of control or authority over premises and possessions may consent to a warrantless search thereof, and the fruits of that search will be admissible against occupants or co-

owners who were not present either at the time of the consent or of the search. *United States v. Matlock,* 415 *U.S.* 164, 171, 94 *S.Ct.* 988, 993, 39 *L.Ed.*2d 242, 250 (1974); *State v. Coyle,* 119 *N.J.* 194, 215, 574 *A.*2d 951 (1990); *State v. Douglas,* 204 *N.J.Super.* 265, 276–279, 498 *A.*2d 364 (App.Div.1985), *certif. denied,* 102 *N.J.* 378, 508 *A.*2d 242 (1985), 102 *N.J.* 393, 508 *A.*2d 253 (1986).

We start then with the assumption that Mrs. Younger had given a voluntary consent, at least implied, for the police to search that bedroom for the gun that she had reported seeing in defendant's possession. The police testimony leaves no possibility of a finding that she gave any more extensive consent. The question then, of course, is whether the search that led to the discovery of the heroin exceeded either the scope of the consent actually given by Mrs. Younger or the scope of her authority to have given any consent at all. We think it obvious that this search exceeded the scope of the consent in both respects.

■ First, it is clear that when police rely on a consent to search, the search that may be conducted pursuant thereto is limited by the scope, whether express or implied, of the consent. As explained by LaFave, 3 *Search and Seizure,* § 8.1(c) at 620 (3d ed.1996):

> The most common limitation on the scope of a search conducted pursuant to consent, however, is a limitation upon the intensity of the police activity permissible after entry of the designated place. While ordinarily this limitation is not expressly stated by the consenting party, it arises by implication from the fact that the police usually indicate that the consent is being sought for a particular purpose. When a purpose is included in the request, then the consent should be construed as authorizing only that intensity of police activity necessary to accomplish the stated purpose.

Thus, as the United States Supreme Court has reaffirmed in *Florida v. Jimeno,* 500 *U.S.* 248, 251, 111 *S.Ct.* 1801, 1804, 114 *L.Ed.*2d 297, 303 (1991), "[t]he scope of a search is generally defined by its expressed object." *And see United States v. Dichiarinte,* 445 *F.*2d 126, 129 (7th Cir.1971) ("Government agents may not obtain consent to search on the representation that they intend to look only for certain specified items and subsequently use that consent as a license to conduct a general exploratory

search"). *See also* Byrnes, *New Jersey Arrest, Search and Seizure,* § 16:4 (Gann 1996), noting that "the nature of the item sought may in itself dictate a limit to the search," and thus it would be unreasonable, for example, "to search desk drawers upon receiving consent to search for a stolen grand piano."

■ It is incontrovertible that the authority conferred on the police by the consent here given was limited to a search for a handgun. As the officer testified, he was led by Mrs. Younger to the bedroom after asking her where defendant's gun was likely to be. She patently did not give, either expressly or impliedly, any general consent to search, and the officer could not reasonably have believed that she had done so. The officer, by his own admission, knew there could not possibly be a handgun in the change purse. Opening the purse, therefore, exceeded the scope of the authority conferred upon him by the consent. The warrantless search and ensuing seizure were, therefore, unauthorized, unreasonable and unconstitutional.

■ There is a second and corollary limitation on the scope of the consent given by Mrs. Younger. As the Supreme Court made clear in *State v. Coyle, supra,* 119 *N.J.* at 217–218, 574 *A.*2d 951, the authority of the owner of premises to consent to a search of a portion thereof occupied by another does not extend to the possessions of the occupier that are not in plain view—and clearly not to closed luggage or other containers. The obvious rationale for this limitation is that a person has the capacity to consent to a search only of those premises and possessions which are under his shared or exclusive control and authority or which that person or the police reasonably believe, under the circumstances, to be within his control or authority. There is no capacity to consent to a search of premises or possessions in which another person has or should be reasonably believed to have an exclusive right of control or a right of privacy. *See, e.g., State v. Allen,* 254 *N.J.Super.* 62, 67, 603 *A.*2d 71 (App.Div.1992); *State v. Lee,* 245 *N.J.Super.* 441, 447, 586 *A.*2d 256 (App.Div.1991); *State v. Thomas,* 224 *N.J.Super.* 221, 229, 540 *A.*2d 196 (App.Div.1988). We are, therefore, of the

view that not only was the scope of the consent given by Mrs. Younger limited to a search for a handgun, but that, moreover, she patently did not have the authority to have consented to a search of the closed containers containing defendant's property located in the room that he occupied.

The question then remaining is whether the warrantless search here can be justified or validated by the provision of the Domestic Violence Act we have quoted. Plainly not. To begin with, the Domestic Violence Act is obviously subject to the Supremacy Clause of Article VI the United States Constitution, and, therefore, just as obviously subject to the constraints imposed by the Fourth Amendment. The Act is also, of course, subject to the New Jersey constitutional guarantee against unreasonable searches and seizures afforded by *N.J. Const.* art. I, ¶ 7. The authority conferred on law enforcement officers by the Act to determine whether any weapons are on the premises and to seize any weapons observed or learned about that pose a risk of harm to the victim of domestic violence must be construed consistently with both the federal and the state Constitutions.

We need not here fully address the scope of the search that an officer may undertake under the Domestic Violence Act to find a weapon upon being informed that there might be one on the premises although it may well be that, ultimately, the permissible scope in each case will be dependent on the circumstances, including the extent and nature of the officer's probable cause to believe that there is a dangerous weapon on the premises and the degree of exigency of the situation, if any. This much, however, is clear. The authority granted by the Domestic Violence Act does not constitute a license for the officer to conduct a general and intensive search beyond what is reasonable to locate the weapon the officer believes is on the premises. That is to say, however expansive the scope of the statutorily authorized search may be, it is nevertheless limited by what must be its exclusive object, the finding of the reported weapon. The change purse opened by the

officer here was known by him to not possibly have contained the reported handgun. It was, therefore, off limits.

Because we reverse the order denying the suppression motion and remand for a new trial, we need only briefly address the assertions of trial error. Defendant has raised the following issues:

THE PROSECUTOR'S IMPROPER REMARKS DENIED THE DEFENDANT A FAIR TRIAL. *U.S. CONST.* AMEND. XIV; *N.J. CONST.* (1947), ART. I, PAR. 10. (Not raised below)

THE ADMISSION INTO EVIDENCE OF "OTHER CRIMES" TYPES OF EVIDENCE, WHICH INCLUDED TESTIMONY THAT THE DEFENDANT WAS ARRESTED AT THE SCENE FOR A DOMESTIC VIOLENCE AS-SAULT, DENIED THE DEFENDANT HIS RIGHT TO FAIR TRIAL, AND DUE PROCESS, AND VIOLATED *N.J.R.E.* 404(b); *N.J. CONST.* (1947), ART. I, PAR. 1, 9 AND 10. (Not raised below)

BECAUSE THE DEFENDANT WAS INDICTED AND TRIED ON A CHARGE THAT DID NOT CONSTITUTE A SEPARATE CRIME HE WAS IRREPARABLY PREJUDICED IN THE EYES OF THE JURY AND THUS DENIED HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS. *U.S. CONST.* AMEND. XIV; *N.J. CONST.* (1947), ART. I, PARA. 10. (Not raised below)

THE ENTIRE TRIAL WAS SO INFECTED WITH ERROR THAT EVEN IF THE INDIVIDUAL ERRORS, AS SET FORTH, *SUPRA*, DO NOT CONSTI-TUTE REVERSIBLE ERROR, THE ERRORS IN THE AGGREGATE DE-NIED DEFENDANT A FAIR TRIAL. (Not raised below)

THE EXTENDED SENTENCE IMPOSED BY THE TRIAL JUDGE IS EX-CESSIVE AND INAPPROPRIATE UNDER THE MANDATE OF THE CODE OF CRIMINAL JUSTICE.

█ Much of what defendant complains about relates to the extent to which the asserted act of domestic violence was inserted into this heroin-possession trial. We agree that it was irrelevant to the issues properly before the jury. We see no basis on which the alleged domestic violence was probative of a material issue properly in dispute in this simple possession trial, and evidence thereof should consequently not have been admitted. *N.J.R.E.* 404(b). Nor, therefore, should the alleged domestic violence have been the basis of any comment by the prosecutor.

With respect to whether simple possession of drugs in a school zone can constitute two separate offenses rather than simply rendering the school-zone factor a sentence-enhancing circum-

stance, we are satisfied that the Supreme Court has answered that question by declaring, in *State v. Baynes,* 148 *N.J.* 434, 449, 690 *A.*2d 594 (1997), that "[p]ossession of CDS in a school zone [under *N.J.S.A.* 2C:35–10a], on the other hand [as contrasted to possession with intent to distribute or actual distribution as interdicted by *N.J.S.A.* 2C:35–7], is not a separate crime. · Rather it is a sentencing factor...." *See also* Cannel, *Criminal Code Annotated,* comment 1 on *N.J.S.A.* 2C:35–10 (1997), whose reasoning was endorsed by the Supreme Court in *Baynes, supra,* 148 *N.J.* at 449, 690 *A.*2d 594.

Finally, because there must be a new trial, we do not address either the claim of cumulative error or the challenge to the extended sentence.

The order denying the motion to suppress and the judgment of conviction are reversed.   We remand for a new trial.