221 P.3d 511

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Matsu THORNTON, Defendant–Appellant,**

and

**Howard Gipson, Defendant.**

No. 29429.

Intermediate Court of Appeals of Hawai'i.

Dec. 1, 2009.

Taryn R. Tomasa, Deputy Public Defender, State of Hawaiʻi, on the briefs, for Defendant–Appellant.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, for Plaintiff–Appellee.

WATANABE, PRESIDING J., FOLEY, and FUJISE, JJ.

Opinion of the Court by WATANABE, J.

Defendant–Appellant Matsu Thornton (Thornton) appeals from the judgment en-

tered by the Circuit Court of the First Circuit[1] (circuit court) on August 25, 2008, convicting and sentencing him for Unauthorized Possession of Confidential Personal Information in violation of Hawaii Revised Statutes (HRS) § 708–839.55 (Supp.2008).[2]

The sole issue raised by Thornton on appeal is that the circuit court erred in denying his motion to suppress evidence. More specifically, Thornton claims that the police exceeded the scope of his consent to a search for firearms and ammunition when they searched his black Guess wallet (wallet) and discovered another person's driver's license (license). We agree with Thornton and reverse the judgment.

## BACKGROUND

### A.

On January 23, 2007, Honolulu Police Department (HPD) Officer Kawika Nishimoto (Officer Nishimoto) stopped a car at the intersection of Ala Wai Boulevard and 'Olohana Street "for expired motor vehicle tax." Thornton was in the driver's seat of the car, and Howard Gipson (Gipson) was in the front passenger's seat. Jason Pistor,[3] then an HPD officer (Officer Pistor), also responded to the scene. Although it was past midnight, the area of the traffic stop "was well lit" by overhanging street lights and both officers had their duty flashlights. Thornton presented his identification and vehicle registration and insurance card to Officer Nishimoto, who, suspecting that the insurance card was fraudulent, went to call the insurance company named on the card.

Meanwhile, Officer Pistor provided cover for Officer Nishimoto. Standing beside Thornton's car, Officer Pistor observed the outline of a bullet-proof vest under Thornton's t-shirt and suspected that a firearm or ammunition may be inside the car. Officer Pistor expressed that Thornton seemed nervous, his eyes were red, and he repeatedly placed his hands underneath his seat. Officer Pistor also smelled alcohol coming from the car and asked Thornton to exit the car for a field sobriety test, which Thornton passed.

At Officer Pistor's request, Thornton agreed to allow a search of his car and signed a written consent form that stated, in relevant part:

I, [THORNTON] do hereby give my consent to have my AUTO, & CONTENTS, BAGS described as follows: NVJ679 searched by members of the [HPD]: [OFFICER] PISTOR.

I understand that the Police are searching for evidence of the crime of POSSESSION PROHIBITED/FIREARMS, more specifically, FIREARMS, AMMUNITION.

I understand that I have a constitutional right to refuse to allow this search and I hereby waive this right.

I understand that I have a right to consult with an attorney before allowing this search, and I hereby waive this right.

I am fully aware that any property found which is the fruit (stolen property) or instrumentality of a crime (weapons, etc.), or contraband (property which cannot be legally possessed) may be used against me in a criminal prosecution in a court of law.

---

1. The Honorable Steven S. Alm presided.

2. HRS § 708–839.55 states currently, as it did at the time of the alleged offense, as follows:

    **Unauthorized possession of confidential personal information.** (1) A person commits the offense of unauthorized possession of confidential personal information if that person intentionally or knowingly possesses, without authorization, any confidential personal information of another in any form, including but not limited to mail, physical documents, identification cards, or information stored in digital form.

    (2) It is an affirmative defense that the person who possessed the confidential personal information of another did so under the reasonable belief that the person in possession was authorized by law or by the consent of the other person to possess the confidential personal information.

    (3) Unauthorized possession of confidential personal information is a class C felony.

3. Throughout the record on appeal, Officer Pistor's last name is spelled "Pistor[,]" with the exception of the November 9, 2007 transcript of proceedings, where his last name is spelled "Pestor[.]"

I am not presently under the influence of drugs or intoxicating beverage and am not mentally unstable.

I give my consent voluntarily and have not been threatened, coerced, or intimidated in any manner, nor have any promises been made to me in return for my giving my consent to this search.

(Blank lines and description of information to be filled in on blank lines omitted.)

Thornton and Gipson then exited the vehicle and Officer Pistor began his search. In the space between the driver's door and seat, Officer Pistor found a plastic bag that contained a crystal substance, later identified as methamphetamine. Next, under the front passenger's seat, he discovered a "green bluish" plastic box that contained a scale and crystal methamphetamine. Lastly, Officer Pistor located a closed black wallet lying flat on the driver's seat. Inside the wallet, Officer Pistor found "other i.d.'s[,]"[4] including the license at issue in this case. Thereafter, the officers placed Thornton and Gipson under arrest, conducted searches incident to the arrests, and recovered from Gipson's pockets a plastic straw, a pipe, and some methamphetamine.

## B.

On January 31, 2007, Plaintiff–Appellee State of Hawaiʻi (State) filed a complaint charging Thornton with Count I, Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712–1243 (Supp.2008);[5] Count II, Unlawful Use of Drug Paraphernalia in violation of HRS § 329–43.5(a) (1993); and Count III, Unauthorized Possession of Confidential Personal Information in violation of HRS § 708–839.55.[6]

On April 30, 2007, Thornton filed a motion to suppress the wallet and its contents, including the license that was the basis for the Unauthorized–Possession–of–Confidential–

Personal–Information charge. Thornton argued, in part, that "written consent to search was given for the limited purpose of having his automobile, contents and bags searched for evidence of firearms and/or ammunition"; "[a]ny other search beyond looking for firearms and/or ammunition exceeded the scope of [Thornton's] consent"; and "Officer Pistor's action of opening the [wallet] was an intrusive and unconstitutional search" that "exceeded the scope of the given consent."

In its memorandum in opposition, the State argued that the evidence was recovered pursuant to a valid search because Thornton freely consented to the search of his vehicle, its contents, and bags.

At the November 9, 2007 hearing on Thornton's motion to suppress, Officer Pistor testified that pursuant to Thornton's written consent form, he searched Thornton's "vehicle, the contents within and bags within the vehicle" for "[f]irearms or ammunition." Officer Pistor recalled that after signing the consent form, Thornton "stated that anything we find in the vehicle is not his."

Officer Pistor related that after discovering the narcotics and paraphernalia, he found a black "[n]ormal sized wallet three by five" on the driver's seat which "contained other i.d.'s." The wallet was lying "closed on the seat ... flat" and Officer Pistor proceeded to open it up and look inside "[f]or ammunition."

The following colloquy occurred between defense counsel and Officer Pistor:

[DEFENSE COUNSEL] Q. ... Did you pick [the wallet] up and feel it first, anything like that?

[OFFICER PISTOR] A. No.

Q. You just proceeded to just open it up?

A. Yes.

---

4. The record on appeal indicates that aside from Thornton's license, the wallet contained one Hawaiʻi driver's license and three State of Hawaiʻi identification cards belonging to other individuals.

5. The current version of HRS § 712–1243 is the same as when Thornton allegedly violated the statute.

6. Gipson was named as a co-defendant in the complaint, and he later pled guilty to Count IV—Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712–1243, and Count V—Unlawful Use of Drug Paraphernalia in violation of HRS § 329–43.5(a).

Q. Okay. And just asking but do you know if that's the same wallet that [O]fficer Nishimoto saw when he asked [Thornton] to take out his driver's license? Do you know that?

A. No.

. . . .

Q. Did you ask [Officer Nishimoto] at any time is this the guy's wallet you took the i.d. out of?

A. I asked [Thornton] if it was his. He said yes.

Q. You didn't ask [O]fficer Nishimoto?

A. No.

Q. You didn't think there was a gun in there, right?

A. No.

Q. *Did you think there was ammunition in there?*

A. *Possibly.*

Q. Did you bother—I mean did it make you nervous that you're looking for ammunition in something and you're handling it? *Did you kind of feel around first at all?*

A. *It didn't make me nervous. I didn't feel anything.*

(Emphases added.)

In addition, Officer Nishimoto testified that although he did not participate in the search of Thornton's car, he saw the wallet after the search and it was "the same wallet that [Thornton] took his i.d. out of."

The circuit court orally denied Thornton's motion to suppress evidence and explained, as to the scope of the search, as follows:

And, while a wallet certainly couldn't contain a firearm, it—it could contain a bullet, it could contain a round and it does harpen [sic] the fact there was a movie a few years ago called Man on Fire where staring [sic] Denzel Washington where I believe he tried to commit suicide and the gun didn't fire so he put the bullet away in his wallet and later gave it to the man of the house who had arranged his own son's kidnapping and that guy used it to shoot himself. So, as an example, we know how small wallets are, we know bullets certainly are a lot smaller. I don't know how many bullets could be in a wallet. Certainly, could

find one or more in a typical wallet. And, so, I think that the search as conducted was proper in all respects and does not constitute an unreasonable search based on the consent that was given.

So, the motion to suppress is denied.

On November 28, 2007, the circuit court filed its "Findings of Fact, Conclusions of Law, and Order Denying [Thornton's] Motion to Suppress Evidence[,]" which stated, in relevant part, as follows:

### FINDINGS OF FACT

. . . .

5. Due to [Thornton's] behavior and the fact that [Thornton] was wearing a bullet proof vest, Officer Pistor had a suspicion that a firearm or ammunition could be within the vehicle. Officer Pistor then requested [Thornton's] permission to search the vehicle for any firearms or ammunition.

6. Officer Pistor utilized the HPD–393, *WRITTEN CONSENT TO SEARCH*, form to advise [Thornton] of the parameters of the search and of his constitutional rights regarding the consent to search.

7. After reviewing the form, [Thornton] signed the form and indicated that he understood his rights, waived those rights and voluntarily consented to the search of his vehicle, contents and bags.

8. When Officer Pistor conducted a search of the vehicle, the following items were located.

a. A plastic baggy containing a white crystal substance that resembled methamphetamine was located in between the driver side door and seat.

b. A plastic container was located under the front passenger seat. Within the container was a plastic baggy with a white crystal substance that resembled methamphetamine.

c. A black wallet was located on the driver's seat. Inside of the wallet there was a drivers license for a male [other than Thornton].

. . . .

### CONCLUSIONS OF LAW

1. Officer Nishimoto stopped [Thornton] for a motor vehicle tax citation. That

initial stop was valid and based on probable cause.

2. A search conducted pursuant to a voluntary and uncoerced consent by the person whose property is being searched is one of the exceptions to the warrant requirement, and is not constitutionally proscribed. *State v. Patterson*, 58 Haw. 462, 571 P.2d 745 (1977); *State v. Pau'u*, 72 Haw. 505, 824 P.2d 833 (1992).

3. "Consent" in the constitutional sense means more than the absence of an objection on the part of the person to be searched; it must be shown that such consent was freely and voluntarily given. *State v. Bonnell*, 75 Haw. 124, 856 P.2d 1265 (1993). Whether consent to search has been given voluntarily is a question of fact to be determined by the trial court from the "totality of all the circumstances." *Patterson*, 58 Haw. at 468, 571 P.2d 745.

4. Based on the totality of circumstances, [Thornton's] consent was given knowingly and voluntarily. [Thornton] was not under the influence, as indicated by the fact that he passed the field sobriety test. [Thornton] was coherent to time and place. Prior to giving his consent, [Thornton] was fully warned, both verbally and in writing, of his rights. Lastly, there was no evidence of coercion, fraud, or trickery to get [Thornton] to waive his rights.

5. **The items that were located were within the scope of the consent to search.**

6. The container that was located and opened was big enough to contain a small firearm and ammunition.

7. **The wallet that was located and opened could not contain a firearm, however it could contain a round or more of ammunition.**

8. The search as it was conducted was proper in all respects based on the consent that was voluntarily given by [Thornton].

(Bolded emphases added.)

### C.

At trial, Thornton admitted that he had signed the consent-to-search-for-ammunition-and-firearms form, knew that he did not have to sign the form, and was not intimidated into signing it. When asked why he let the police search his car when he did not have to, Thornton responded: "As far as I knew, there were no ammunition or firearms in my car and nothing else illegal that I knew of." Thornton said that he did not have anything in the car to hide. Thornton also admitted that his possession of the license was unauthorized, but he denied any connection to the drugs and paraphernalia found in the car. The jury acquitted Thornton of Counts I and II, the drug-related charges, but convicted him of Count III, Unauthorized Possession of Confidential Personal Information. This appeal followed.

### DISCUSSION

### A.

■ The circuit court's ruling on a motion to suppress is reviewed *de novo* to determine whether, as a matter of law, the ruling was "right" or "wrong."

However, the circuit court's findings of fact, upon which the court's ruling rests, are reviewed to determine whether they are clearly erroneous. A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.

*State v. Silva*, 91 Hawai'i 111, 115, 979 P.2d 1137, 1141 (App.1999) (citations and internal quotation marks omitted). In addition,

[t]he proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawai'i Constitution.

*State v. Spillner,* 116 Hawai'i 351, 357, 173 P.3d 498, 504 (2007).

"[W]arrantless searches are invalid unless they fall within narrowly drawn exceptions" such as "[a] search conducted pursuant to voluntary and uncoerced consent by the person being searched[.]" *State v. Mahone,* 67 Haw. 644, 646, 701 P.2d 171, 173 (1985). Consensual searches are approved "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v. Jimeno,* 500 U.S. 248, 250–51, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). "The scope of a search is generally defined by its expressed object." *Id.* at 251, 111 S.Ct. 1801. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.*

A consensual search is confined to the terms of its authorization. The scope of the actual consent restricts the permissible boundaries of a search in the same manner as the specifications in a warrant. If the government does not conform to the limitations placed upon the right granted to search, the search is impermissible. In justifying a consensual search, the government bears the burden of establishing that the search was conducted within the purview of the consent received.

When an individual gives a general statement of consent without express limitations, the scope of a permissible search is not limitless. Rather it is constrained by the bounds of reasonableness: what a police officer could reasonably interpret the consent to encompass.

*United States v. Strickland,* 902 F.2d 937, 941 (11th Cir.1990) (citations omitted). *See also State v. Nabarro,* 55 Haw. 583, 583–87, 525 P.2d 573, 574–75 (1974) (holding that while a lawfully issued warrant to search premises authorizes the officers executing it to "search, in a reasonable manner, whatever spots within the described premises their professional experience indicates may be used as a cache for the items named in the warrant[,]" such a warrant "does not by its own force permit a search of the persons—residents or visitors—who chance to be [at the premises] at the time the warrant is executed" or belongings of a non-resident visitor present on the premises) (internal quotation mark omitted).

Hence, "[c]onsent to search a general area will not validate the search of a specific area or item if that specific area or item is in fact surrounded by an independent privacy interest." *Mahone,* 67 Haw. at 648, 701 P.2d at 174. Moreover, "[s]peculation or curiosity cannot provide the sole basis to legitimize warrantless searches or seizures." *State v. Reed,* 70 Haw. 107, 114, 762 P.2d 803, 807 (1988); *State v. Kaluna,* 55 Haw. 361, 371, 520 P.2d 51, 59 (1974) (suppressing evidence of narcotics wrapped in a tissue and found during a pre-incarceration search because (1) "[f]rom an objective standpoint, it was unlikely that the small packet secreted a weapon which the defendant could have used to escape or harm her captors[,]" and "even if it had contained a small weapon, such as a razor blade, once the packet was in [the police matron's] possession there was no further danger that the defendant could use it"; and (2) the defendant was originally arrested for attempted robbery and the police matron "had neither a belief that [the tissue] contained instrumentalities [of the crime of attempted robbery] nor any grounds to suspect that it contained drugs. Her sole purpose in unfolding the tissue was to satisfy her curiosity — a purpose which is clearly improper.").

A search for firearms and ammunition pursuant to consent exceeds the scope of consent when either the characteristics of the area to be searched, or the investigating officer's observations, do not reasonably suggest the presence of firearms or ammunition. *See, e.g., State v. Younger,* 305 N.J.Super. 250, 702 A.2d 477, 479–80 (Ct.App.Div.1997) (opening a closed, pliable, three-inch-by-two-inch vinyl change purse which had an identity card sticking out and contained heroin exceeded the scope of a consent to search for a handgun inasmuch as the police officer "conceded that the purse obviously could not have contained a gun and that anything sharp or hard that might have been inside it could have been felt without opening it" and

the police officer also admitted that he had searched the purse for identification and ammunition); *Foster v. State,* 285 Ga.App. 441, 646 S.E.2d 302, 306 (2007) (holding that the defendant's consent to a "search of his pockets for weapons cannot be interpreted as having extended so far as to have authorized [the police officer] to remove the contents of [the defendant's] pockets unless he came upon something that felt like a weapon or an object immediately identifiable as contraband. According to [the police officer], he felt neither."). *See also State v. Barnes,* 58 Haw. 333, 339, 568 P.2d 1207, 1212 (1977) ("There was nothing in the conduct of the defendant, or in the nature and appearance of the brown paper bag, that could have led the officer reasonably to believe that it contained a weapon.... [I]n no way could the arresting officer have known of the marijuana in the brown paper bag without first seizing it and examining its contents."); *State v. Huether,* 453 N.W.2d 778, 782 (N.D. 1990) (concluding that although the driver consented to a search for open containers of alcohol, the small paper bag tucked under the car seat "had neither the weight nor the shape of an alcoholic beverage container" and it "became obvious" that the bag could not have held a bottle or can "once the officer pulled it from under the seat").

■ "Assuming an unreasonable search or seizure, any evidence derived therefrom is inadmissible in a criminal prosecution, and a conviction obtained thereby must be reversed." *State v. Wallace,* 80 Hawaiʻi 382, 393, 910 P.2d 695, 706 (1996) (internal quotation marks and ellipsis omitted).

■ Here, the circuit court concluded that the search that resulted in the discovery of the license was within the scope of consent because "[t]he wallet that was located and opened could not contain a firearm, however it *could* contain a round or more of ammunition." (Emphasis added.) While we agree

that a wallet is a plausible, though uncommon, location to hide ammunition, we nonetheless conclude that the circuit court erred in denying the motion to suppress the license.

As stated on the HPD consent form, the search of Thornton's automobile and its contents was expressly confined to evidence of "FIREARMS, AMMUNITION." In his testimony at the suppression hearing, Officer Pistor acknowledged that the wallet was lying "closed on the seat[,]" and he searched the wallet "[f]or ammunition." However, Officer Pistor further testified that he was not nervous in handling a wallet that may "[p]ossibly" contain ammunition because he could not "feel anything." Additionally, while Officer Pistor searched the wallet, he was not in any danger since both Thornton and Gipson were outside the car.

Under the facts of this case, Officer Pistor's observations did not reasonably suggest the presence of ammunition inside the wallet. Thus, the continued search that uncovered the license was objectively unreasonable and exceeded the scope of Thornton's consent. Furthermore, even if Thornton's consent could reasonably be construed as authorizing a search of the wallet, there was no evidence that when Officer Pistor opened the wallet and found no ammunition, the license was in plain view.

### CONCLUSION

In light of the foregoing discussion, we reverse the August 25, 2008 judgment of conviction and sentence.