STATE OF HAWAII, Plaintiff-Appellant, *v.* ARNETTE BARRETT, Defendant-Appellee

NO. 9761

(CRIMINAL NO. 59132)

JUNE 14, 1985

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY HAYASHI, J.

This is an appeal by the State of Hawaii of an Order Granting Defendant's Motion to Suppress Evidence filed on February 13, 1984. The trial court concluded the warrantless seizure of a purse illegal because it was effected without probable cause or exigent circumstances. It also invalidated the subsequent seizure of a quaalude tablet as a product of the initial illegal seizure of the purse. For the reasons stated below, we reverse the order.

I.

In the evening of April 26, 1983, Officer Douglas Tanaka of the Morals Detail of the Honolulu Police Department was working in

the downtown area of Honolulu. As he was driving through the town, Arnette Barrett (hereinafter "Defendant") waved him over. She asked Officer Tanaka if he was looking for a "date." They agreed upon a price of forty dollars and to "doing it" in the car.

They drove to the parking lot of a nearby condominium. Officer Tanaka paid Defendant her forty dollars. She put the money in her purse and handed Officer Tanaka a wrapped condom. Defendant prepared herself for sexual intercourse.

Officer Tanaka identified himself as a police officer and placed Defendant under arrest for prostitution in violation of Hawaii Revised Statutes (hereinafter "HRS") § 712-1200 (Supp. 1984). The validity of this arrest was not questioned by Defendant.

After the arrest, Officer Tanaka signalled Officer Raoul Reynoso who had followed him. Defendant had tossed the forty dollars out of her purse and torn and thrown off the condom and wrapper. Officer Reynoso recovered these items.

Defendant's purse, described as being approximately eight-inches by six-inches, was next to her right foot on the floor of the vehicle. Officer Reynoso seized the purse and placed it on the roof of Officer Tanaka's car.

At the hearing on the Motion to Suppress, Officer Tanaka testified why the purse was seized:

THE COURT: Then why was the purse seized?

THE WITNESS: Just for safety precautions. We didn't search it or anything. We just moved it and placed it on top of the roof.

THE COURT: When you say safety, would you elaborate?

THE WITNESS: Possible weapons.

THE COURT: Was there anything that she did or anything that you saw or anything that you might have felt that would indicate that would be a danger to you?

THE WITNESS: No. There was no — I mean, there was no imminent danger. But just for safety precautions on our portion, we removed the purse.

Transcript, February 3, 1984, at 9.

Officer Reynoso also gave his reason:

Q. Why did you do that?

A. Well, this is just a precaution — for safety precaution.

Q. For whose safety?

A. For both the defendant and ourselves.

Q. Okay. Can you give us an example of the kind of things — the kind of safety precautions you were worried about? What could actually happen?

A. Well, a person might —

. . . .

THE WITNESS: A person may hide some kind of a weapon or contraband in a purse. And for this reason we will take the purse into custody.

Q. And you'll take the purse away from the person?

A. Yes, we do.

Transcript, February 3, 1984, at 13-14.

As the officers were preparing Defendant for transfer, she asked for a cigarette. She told Officer Reynoso it was in her purse. He told her that he would have to get it for her. According to Officer Reynoso, Defendant said, "That's okay. I want to smoke a cigarette." Transcript, February 3, 1984, at 15-16.

Officer Reynoso removed the package of cigarettes from the purse and returned the purse to the top of the roof. He tried to get a cigarette out of the package and shook it. He turned it upside down. It would not come out. So he looked into the package and noticed a cellophane packet. He took the packet out. He immediately recognized the content as a quaalude tablet. Defendant was charged with Promoting a Dangerous Drug in the Third Degree in violation of HRS § 712-1243 (1976).

Defendant moved to suppress the seized quaalude. In her memorandum in support of her motion, she argued: "While the search incident to arrest exception might appear to be applicable, this exception is clearly inappropriate in the instant case given the lack of probable cause to search and the absence of exigent circumstances." Record at 18.

The trial court found "[t]hat said seizure [of the purse] was effected without any articulable suspicion that the Defendant might have a weapon or contraband therein." Finding of Fact No. 7, Record at 49.

The trial court concluded:

1. The warrantless seizure of the Defendant's purse by Officer Reynoso was effected without probable cause and in the

absence of exigent circumstances and is hence illegal. *State v. Dorson,* 62 Haw. 377 (1980); *State v. Lloyd,* 61 Haw. 505 (1980); *State v. Kapoi,* 64 Haw. 130 (1981).

2. The subsequent seizure of the quaalude tablet was a product of the initial illegal seizure. *Wong Sun v. United States,* 371 U.S. 471 (1963).

Conclusions of Law Nos. 1 and 2, Record at 50.

Defendant's Motion to Suppress was granted.

## II.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. This provision was made applicable to the states through the Fourteenth Amendment in *Mapp v. Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). The Hawaii Constitution similarly provides that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated. . . ." Haw. Const. art. I, § 7.

Because of these constitutional protections, government agents are required to obtain search warrants based on probable cause before effecting a search and seizure of persons or places connected to criminal activity. *State v. Dias,* 62 Haw. 52, 609 P.2d 637 (1980). However, this court has enumerated exceptions to this general warrant requirement. *State v. Russo,* 67 Haw. 126, 681 P.2d 553 (1984) (consent); *State v. Clark,* 65 Haw. 488, 654 P.2d 355 (1982) (exigent circumstances); *State v. Faulkner,* 64 Haw. 101, 637 P.2d 770 (1981) (automobile exception); *State v. Bennett,* 62 Haw. 59, 610 P.2d 502 (1980) ("open view"); *State v. Powell,* 61 Haw. 316, 603 P.2d 143 (1979) ("plain view"); *State v. Paahana,* 66 Haw. 499, 666 P.2d 592 (1983) (search incident to arrest).

It must be noted, however, that a warrantless search of items or premises in which a defendant has a legitimate expectation of privacy is presumptively unreasonable. *Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576, 585 (1967); *Paahana,* 66 Haw. at 504, 666 P.2d at 596. The State overcomes this presumption by proving that the search falls within one of the excep-

tions to the warrant requirement. *Chimel v. California*, 395 U.S. 752, 762, 89 S. Ct. 2034, 2039-40, 23 L. Ed. 2d 685, 693 (1969); *Paahana*, 66 Haw. at 504, 666 P.2d at 596.

The State contends that the seizure of the purse and the seizure of the quaalude tablet were valid because they fell within the exception of a search and seizure incident to a lawful arrest. This doctrine is a recognized exception to the warrant requirement in this state. *State v. Paahana*, 66 Haw. 499, 666 P.2d 592 (1983).

The United States Supreme Court in *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 477, 38 L. Ed. 2d 427, 440-441 (1973) stated:

A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

We declined to follow this approach in *State v. Kaluna*, 55 Haw. 361, 520 P.2d 51 (1973), in interpreting our state constitution. Then, in *Paahana*, we delineated the requirements the State must meet to validate a warrantless search based on the search incident to a lawful arrest exception.

Initially, we noted that such a search is limited in scope to a search of the arrestee's person and the area within his immediate control from which he could obtain a weapon or destroy evidence. *Paahana*, 66 Haw. at 505, 666 P.2d at 597. Then, we noted the similarity of such searches to the more general exception for searches motivated by exigent circumstances. We held that "[i]n order for the State to take advantage of [the search incident to a lawful arrest] exception, the State must be able to point to specific and articulable facts from which it may be determined that the officers' actions were necessitated by the exigencies of the situation which called for an immediate police response." *Paahana*, 66 Haw. at 506, 666 P.2d at 597.

Although we analogized the situation to that of the exigent circumstances exception, we did not completely adopt the same

requirements for that exception. The exigent circumstances exception initially requires that government agents have probable cause to search. *Clark,* 65 Haw. at 494, 654 P.2d at 360. Probable cause to search is not required for a search incident to a lawful arrest. Instead, the requirement is that the government agent "be able to point to specific and articulable facts" that an exigency existed. This language derives from the "stop and frisk" cases of *Terry v. Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), and its progeny and is generally known as the "reasonable suspicion" standard.

Thus, after a lawful arrest, if a government agent has a reasonable suspicion that an arrestee is armed or that he or she could destroy evidence and the exigencies of the situation call for immediate action, the agent can conduct a warrantless search of the arrestee or the area of his or her immediate reach. Such a search would be a constitutionally reasonable search.

### III.

If we were to apply the standards set forth above to the situation at hand, the lack of specific and articulable facts on the police officers' part that Defendant was armed sufficiently negates the necessity for a search for weapons incident to a lawful arrest. However, from the facts of this case, such a conclusion is not necessary.

The rules that we have set forth above apply only if a search takes place. It is clear that no search of the bag took place here. Officer Reynoso saw the purse by Defendant's foot and took it and placed it on the roof of the car. He never opened it to see what was inside.

Had the officer opened the purse and searched its contents, the argument that he exceeded "the scope of what is considered absolutely necessary to accomplish the purposes for which such searches are permitted," *Paahana,* 66 Haw. at 505, 666 P.2d at 597, would have had strong weight. Because this case involves no search, the technical concepts enumerated above cannot be strictly applied without contorting the concepts to a hybrid corollary of search and seizure law. "Instead, the conduct involved in this case must be tested by the Fourth Amendment's [and article I, section 7's] gen-

eral proscription against unreasonable searches and seizures."
*Terry,* 392 U.S. at 20, 88 S. Ct. at 1879, 20 L. Ed. 2d at 905.

The State has a legitimate and weighty interest in the safety of
its police officers. *See, Pennsylvania v. Mimms,* 434 U.S. 106, 110, 98
S. Ct. 330, 333, 54 L. Ed. 2d 331, 336 (1977). The purse was large
enough to contain a dangerous weapon. Were the officer not
allowed to seize the purse, he would have had to keep an eye on the
arrestee continually until she were to make a move for the purse.
At that point, the officer would have an articulable suspicion that
she may be armed. A search of the bag could follow.

Instead of following such a cumbersome procedure, a pre-
cautionary move on the part of the officer, seizing the purse, would
appear to be a reasonable method of effectuating the legitimate
state interest involved here.

However, the state interest must be balanced against the intru-
sion into the arrestee's interest in freedom from unreasonable gov-
ernment intrusions. *State v. Ortiz,* 67 Haw. 181, ____, 683 P.2d 822,
826 (1984). In Hawaii, "the courts have always been careful to point
out that the interference to which an individual's liberty and pri-
vacy are exposed must be limited to the very minimum necessary to
accomplish the governmental objective." *Nakamoto v. Fasi,* 64 Haw.
17, 24, 635 P.2d 946, 953 (1981).

We conclude that the intrusion involved here was not unrea-
sonable under the circumstances as to rise to constitutional level.
The purse was seized and placed on the roof of the car. The officer
never looked into the purse. What expectation of privacy existed in
the contents of the purse was never violated. "What is at most a
mere inconvenience cannot prevail when balanced against legiti-
mate concerns for the officer's safety." *Mimms,* 434 U.S. at 111, 98
S. Ct. at 333, 54 L. Ed. 2d at 337. The seizure of a purse, large
enough to contain a dangerous weapon, subsequent to a lawful
arrest, is reasonable even without articulable facts that it contains a
weapon. The State's legitimate interest in the safety of its police
officers outweighs the intrusion into the arrestee's interest.

Because we hold that the initial seizure of the purse by Officer
Reynoso was valid, we must reverse the decision of the trial court.
Furthermore, we conclude that the subsequent extraction of the
package of cigarettes from the purse by Officer Reynoso was not a
search. He was acting at Defendant's request. Furthermore, even if

we found there was a search, it is clear Defendant consented to the search by asking for the cigarettes. The quaalude tablet also should not have been suppressed.

The Order Granting Defendant's Motion to Suppress Evidence is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*Alexa D. M. Fujise*, (*Arthur E. Ross* on the opening brief) Deputy Prosecuting Attorneys for plaintiff-appellant.

*Bode A. Uale*, (*Richard W. Pollack* with him on the brief) Deputy Public Defenders for defendant-appellee.