STATE OF HAWAII, Plaintiff-Appellee, *v.* WALTER RITTE, JR., Defendant-Appellant

NO. 10069

AND

STATE OF HAWAII, Plaintiff-Appellee, *v.* WALTER RITTE, JR., Defendant-Appellant

NO. 10085

(CRIMINAL NO. 7472(2))

NOVEMBER 25, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

This is an appeal by Appellant Walter Ritte, Jr., from the denial of his motion to suppress evidence seized at his arrest and the denial of his motion to dismiss charges of illegal possession of firearms and ammunition. We hold that the trial court erred in concluding that Hawaii Revised Statutes § 134-7 (Supp. 1984) applied to Appellant Ritte and that exigent circumstances justified the State's search and seizure. We therefore reverse.

I.

On the evening of March 24, 1983, State Conservation Officers were atop Kualapuu Hill near the center of the island of Molokai. They were on the lookout for illegal night hunters. At about 9:00 p.m. they saw a spotlight being used in the Palaau area on Molokai Ranch land. Night hunters commonly use spotlights to hunt deer since the bright light surprises and immobilizes the wild animals. Officer Randolph Manaba set up a roadblock with other State Conservation Officers on the road leading into Palaau. At around 10:30 p.m., the officers at the roadblock were informed that the spotlighting vehicle was in their area. As the vehicle, a pick-up truck, approached the roadblock, officers saw Appellant standing in the bed of the truck operating the spotlight. Officer Manaba then saw Appellant, after noticing the roadblock, throw something in the front seat and cover some other things in the truck bed with a canvas tarpaulin. The truck was occupied by three people—Anthony Buchanan who was driving, Appellant and Appellant's son.

Officer Manaba identified himself and informed the three suspects of their constitutional rights. He also told them that although they were not under arrest, they were under investigation for illegal night hunting. Officer Michael Coelho walked around to the back of the truck and saw with the aid of a flashlight the butt end of a rifle. Appellant told Buchanan to back up. Officer Manaba attempted to stop the truck from leaving by reaching into the moving vehicle to pull out the keys from the ignition, but Buchanan elbowed him away. The truck retreated down the road with the State Conservation Officers pursuing in a State vehicle. When the State Officers reached Buchanan's farm a few miles

from the roadblock, they saw the unoccupied truck parked outside of the gate leading to the farmhouse; they also saw Buchanan running from the truck towards the house. Appellant Ritte, who already was well away from the truck, walked up to the officers and told them to leave the area since they were on private property. Officer Manaba then placed Appellant under arrest. The other officers went to the house and arrested Buchanan and Appellant's son. After the three were transported to the police station, Officer Mollena searched the pick-up truck and recovered among other things, a spotlight, a .38 caliber revolver, two rifles and ammunition.

Appellant was convicted of illegal night hunting in violation of HRS § 191-24 (Supp. 1984), hunting without a license in violation of HRS § 191-1.1 (Supp. 1984) and illegal possession of firearms and ammunition in violation of HRS § 134-7(b).

## II.

We deal first with Appellant's alleged violation of HRS § 134-7(b).[1]

At the time of Appellant's arrest, Appellant was on probation for a Deferred Acceptance of Guilty Plea (DAG plea) entered in 1979 pursuant to HRS § 853-1 for felony possession of marijuana. At the time of the DAG plea, HRS § 134-7(b) prohibited only those *convicted* of a felony from possessing firearms or ammunition.[2] Since a DAG plea is not a conviction, *State v. Sugimoto*, 62 Haw. 259, 614 P.2d 386 (1980), the statute's prohibition did not apply to Appellant.

In 1981, the State legislature passed Act 239 which amended HRS § 134. Section 134-7(b) was changed to prohibit those convicted *and those "under indictment"* from possessing firearms and ammunition.

---

[1] HRS § 134-7(b) states:

No person *who is under indictment* or who has waived indictment for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or of the illegal sale of any drug, shall own or have in his possession or under his control any firearm or ammunition therefor. (Emphasis added).

[2] In 1979, HRS § 134-7(b) stated:

No person who has been *convicted* in this State or elsewhere, of having committed a felony, or of the illegal use, possession, or sale of any drug, shall own, or have in his possession, or under his control any firearm or ammunition therefor. (Emphasis added).

Act 239 also contained a savings clause which states, "[t]his Act shall take effect on its approval and shall not affect any proceedings which were begun, rights which accrued, or penalties or liabilities which were incurred before the effective date [June 24, 1981]." Act 239, § 9, 1981 Haw. Sess. Laws 462, 467.

Given the language of the savings clause, the question is whether Appellant is saved from the prohibition of HRS § 134-7(b) because he was on DAG status at the time of arrest. It is well established that words in a statute are normally read in their most known and usual signification. HRS § 1-14 (1976); *Kalipi v. Hawaiian Trust Co.*, 66 Haw. 1, 656 P.2d 745 (1982); *Hawaiian Beaches, Inc. v. Kondo*, 52 Haw. 279, 474 P.2d 538 (1970). A statute cannot be construed contrary to its literal meaning unless the literal meaning results in an absurdity and the words are susceptible of another construction carrying out the manifest intent *Save Hawaiiloa Ridge Association v. Land Use Commission*, 57 Haw. 84, 549 P.2d 737 (1976); *Natatorium Preservation Committee v. Edelstein*, 55 Haw. 55, 515 P.2d 621 (1973).

As applied to this case, the savings clause is unambiguous, and the plain meaning of the words does not result in an absurdity. It clearly states that the 1981 amendments "shall not affect any proceedings which were begun . . . before the effective date [June 24, 1981]." Since Appellant was under a DAG proceeding begun before the effective date of June 24, 1981, his conviction under HRS § 134-7(b) cannot stand.

## III.

Appellant Ritte argues further that the evidence obtained from the truck after his arrest should have been excluded at trial as violative of his constitutional protection against unreasonable searches and seizures. A search conducted without a warrant carries with it an initial presumption of unreasonableness. *State v. Rosborough*, 62 Haw. 238, 240, 615 P.2d 84, 86 (1980); *State v. Kaluna*, 55 Haw. 361, 363, 520 P.2d 51, 55 (1974). The government must show that the facts of the case justified the police searching without a warrant and that the search itself was no broader than necessary to satisfy the need which legitimized the departure from the warrant requirement in the first place. *State v. Clark*, 65 Haw. 488, 493, 654 P.2d 355, 359-60 (1982); *Kaluna*, 55 Haw. at 363, 520 P.2d at 55.

The justifications to support warrantless searches have coalesced

into "a few specifically established and well-delineated exceptions." *Clark,* 65 Haw. at 493-94, 654 P.2d at 360 (quoting *Katz v. United States,* 389 U.S. 347, 357 (1967)). There are two exceptions to the requirement of a search warrant that are relevant to this case.

## A.

Warrantless searches are valid when they are incident to valid arrests. *State v. Barrett,* 67 Haw. ___, 701 P.2d 1277 (1985); *State v. Chong,* 52 Haw. 226, 473 P.2d 567 (1970). The justification for allowing warrantless searches incident to valid police arrests is to remove weapons which might be used to resist or threaten officers and to preserve evidence that might be lost by concealment or destruction. *Clark,* 65 Haw. at 496, 654 P.2d at 361. Such warrantless searches are thus limited in scope to the arrestee's person and the area within his immediate control. *Barrett,* 67 Haw. at ___, 701 P.2d at 1281.

Appellee State claims that its search was justified as a search incident to a valid arrest. We disagree. Appellant Ritte and the other arrestees had already been taken from the area, and the pick-up truck was not in an area within their immediate control. *State v. Paahana,* 66 Haw. 499, 505, 666 P.2d 592, 597 (1983).

## B.

Appellee State alternatively claims that the search was justified because both probable cause and exigent circumstances existed. *State v. Faulkner,* 64 Haw. 101, 637 P.2d 770 (1981); *State v. Kapoi,* 64 Haw. 130, 637 P.2d 1105 (1981). There is little doubt that the officers had probable cause since they observed Appellant "spotlighting" and saw parts of a rifle in open view at the roadblock.

To establish exigent circumstances, however, the government must show it had reason to believe that because of the vehicle's mobility or exposure, there was a foreseeable risk that it might be moved or that the evidence which it contained might be lost before a warrant could be obtained. *Kapoi,* 64 Haw. at 142, 637 P.2d at 1114; *State v. Elliot,* 61 Haw. 492, 496, 605 P.2d 930, 932-33 (1980). In this case, the heated chase of the suspects did not create exigent circumstances. Appellant, his son and Buchanan were already under arrest at the time of the search, and the truck was in police custody. There is no evidence that anyone else

258

was on the premises who could remove and conceal the evidence. Further, the vehicle was on private property, and there would have been little or no danger to the public if the officers had waited until obtaining a search warrant. Appellee State has thus failed to satisfy its burden to establish exigent circumstances, and the search therefore cannot be justified on these grounds.

## IV.

We reverse and remand the case for proceedings consistent with this opinion.

*Philip H. Lowenthal (Anthony L. Ranken* with him on the briefs), for Defendant-Appellant.

*Artemio C. Baxa (John E. Tam* with him on the brief), Deputy Prosecuting Attorneys, for Plaintiff-Appellee.