375 P.3d 267

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Michael FRAZER, Defendant–Appellee,**

and

**Neale Johnson, Defendant.**

**No. CAAP–13–0000974.**

Intermediate Court of Appeals of Hawai'i.

May 13, 2016.

As Corrected July 1, 2016.

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff–Appellant.

Phyllis J. Hironaka, Deputy Public Defender, on the briefs, for Defendant–Appellee.

NAKAMURA, Chief Judge, and FOLEY and LEONARD, JJ.

Opinion of the Court by NAKAMURA, C.J.

After pleading guilty to a felony drug offense, Defendant–Appellee Michael Frazer (Frazer) was granted a conditional discharge pursuant to Hawai'i Revised Statutes (HRS) § 712–1255 (2014)[1] and placed on probation subject to conditions for five years. While still within the five-year probationary period, Frazer allegedly possessed a semi-automatic firearm and used it to threaten another person. Plaintiff–Appellant State of Hawai'i (State) charged Frazer with first-degree terroristic threatening with the use of a dangerous weapon, namely, a semiautomatic firearm (Count 1); and possession of a firearm while "under indictment" for a felony (Count 2).

Count 2 charged a violation of HRS § 134–7(b) (2011), which provides:

> No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

Frazer was not charged with being a convicted felon in possession of a firearm, but only with possessing a firearm while "under indictment for a felony[.]" Thus, the question presented in this appeal is whether a person, like Frazer, who is indicted on a felony and is still serving the probationary term imposed on a conditional discharge is "under indictment" within the meaning of HRS § 134–7(b).

The Circuit Court of the First Circuit (Circuit Court)[2] ruled that Frazer was not "under indictment" when he was serving the probationary term of his conditional discharge, and it therefore dismissed Count 2. We conclude that the Circuit Court erred, and we vacate its dismissal of Count 2.

As explained in greater detail below, the language and legislative history of HRS § 134–7(b) make clear that for a person, like Frazer, who is indicted on a felony, HRS § 134–7(b) prohibits such person from possessing a firearm for the full continuum of time that begins with the indictment and continues until the charge is resolved by conviction, acquittal, or dismissal. If the person is convicted, the prohibition against possessing a firearm continues based on the person's status as a convicted felon. Only if the person's felony charge is resolved by acquittal or dismissal does the prohibition against possessing a firearm, which arose from the person's felony indictment, come to an end.

Under our interpretation of HRS § 134–7(b), the statute clearly prohibits a person

---

1.  HRS § 712–1255 provides:

    **Conditional discharge.** (1) Whenever any person who has not previously been convicted of any offense under this chapter or chapter 329 or under any statute of the United States or of any state relating to a dangerous drug, harmful drug, detrimental drug, or an intoxicating compound, pleads guilty to or is found guilty of promoting a dangerous drug, harmful drug, detrimental drug, or an intoxicating compound under section 712–1243, 712–1245, 712–1246, 712–1248, 712–1249, or 712–1250, the court, without entering a judgment of guilt and with the consent of the accused, may defer further proceedings and place the accused on probation upon terms and conditions. Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed as otherwise provided.

    (2) Upon fulfillment of the terms and conditions, the court shall discharge the person and dismiss the proceedings against the person.

    (3) Discharge and dismissal under this section shall be without adjudication of guilt and

is not a conviction for purposes of this section or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime.

(4) There may be only one discharge and dismissal under this section with respect to any person.

(5) After conviction, for any offense under this chapter or chapter 329, but prior to sentencing, the court shall be advised by the prosecutor whether the conviction is defendant's first or a subsequent offense. If it is not a first offense, the prosecutor shall file an information setting forth the prior convictions. The defendant shall have the opportunity in open court to affirm or deny that the defendant is identical with the person previously convicted. If the defendant denies the identity, sentence shall be postponed for such time as to permit the trial, before a jury if the defendant has a right to trial by jury and demands a jury, on the sole issue of the defendant's identity with the person previously convicted.

2.  The Honorable Glenn J. Kim presided.

who is indicted on a felony and is still serving the probationary term of a conditional discharge from possessing a firearm because the person's felony charge has not been resolved—there is no acquittal and the charge has not yet been dismissed. There is a question of whether such person should be considered a convicted felon rather than under indictment while serving the probationary term of the conditional discharge. However, in *State v. Ritte*, 68 Haw. 253, 710 P.2d 1197 (1985), the Hawai'i Supreme Court held that a person who was serving a probationary term on a deferred acceptance of guilty plea under HRS § 853–1[3] was not a "convicted" person for purposes of HRS § 134–7(b). Given the similar purpose and effect of HRS § 853–1 and HRS § 712–1255, we conclude, based on *Ritte*, that a person who is serving a probationary term on a conditional discharge is likewise not a "convicted" person for purposes of HRS § 134–7(b).

The charge against a defendant who is granted a conditional discharge (or deferred acceptance of guilty or nolo contendere plea) is not dismissed and remains pending until the defendant successfully completes the probationary term imposed. *See* HRS § 712–1255(2), HRS § 853–1(c). Frazer's felony drug charge, on which he had been indicted, was still not resolved while he was serving the probationary term on his conditional discharge. We hold that Frazer was "under indictment" for purposes of HRS § 134–7(b) after he was granted a conditional discharge and while he was serving the probationary term imposed. Accordingly, we vacate the Circuit Court's decision to dismiss Count 2 and remand the case for further proceedings.

## BACKGROUND

### I.

In 2008, Frazer was indicted in Cr. No. 08–1–0354 on one count of promoting a dangerous drug in the third degree, which is a felony, and one count of violating an order for protection. On December 2, 2008, Frazer pleaded guilty to both counts. On March 18, 2009, Frazer was granted a conditional discharge pursuant to HRS § 712–1255 on the count for promoting a dangerous drug in the third degree, and the Circuit Court deferred the proceedings and imposed a five-year term of probation subject to conditions on that count. The Circuit Court sentenced

---

**3.** The version of HRS § 853–1 considered in *Ritte* applied to guilty pleas, but not to pleas of nolo contendere, whereas the current version of HRS § 853–1 applies to both guilty pleas and pleas of nolo contendere. Other than this change, there are no material substantive differences between the version of HRS § 853–1 considered in *Ritte* and the current version of HRS § 853–1. HRS § 853–1 (2014) now provides, in pertinent part, as follows:

> **Deferred acceptance of guilty plea or nolo contendere plea; discharge and dismissal, expungement of records.** (a) Upon proper motion as provided by this chapter:
> (1) When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of trial, to a felony, misdemeanor, or petty misdemeanor;
> (2) It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and
> (3) The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law,
> the court, without accepting the plea of nolo contendere or entering a judgment of guilt and with the consent of the defendant and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.

> (b) The proceedings may be deferred upon any of the conditions specified by section 706–624. . . . The court may defer the proceedings for a period of time as the court shall direct but in no case to exceed the maximum sentence allowable; provided that, if the defendant has entered a plea of guilty or nolo contendere to a petty misdemeanor, the court may defer the proceedings for a period not to exceed one year. The defendant may be subject to bail or recognizance at the court's discretion during the period during which the proceedings are deferred.
> (c) Upon the defendant's completion of the period designated by the court and in compliance with the terms and conditions established, the court shall discharge the defendant and dismiss the charge against the defendant,
> (d) Discharge of the defendant and dismissal of the charge against the defendant under this section shall be without adjudication of guilt, shall eliminate any civil admission of guilt, and is not a conviction,
> (e) Upon discharge of the defendant and dismissal of the charge against the defendant under this section, the defendant may apply for expungement not less than one year following discharge, pursuant to section 831–3.2.

Frazer to a two-year term of probation on the count for violating an order for protection.[4]

On February 1, 2012, Frazer was indicted in this case and charged in Count 1 with first-degree terroristic threatening with the use of a dangerous weapon, to wit, a semiautomatic firearm, and in Count 2 with possession of a firearm while "under indictment for a felony[.]" On the date that he allegedly committed the offenses charged in Counts 1 and 2, Frazer was still serving the five-year probationary term on his conditional discharge for promoting a dangerous drug in the third degree. Count 2 charged, in relevant part, that

> MICHAEL FRAZER, a person who is under indictment for a felony, with knowledge or reckless disregard of the substantial and unjustifiable risk that he is under said indictment, did intentionally or knowingly own, possess, or control an object, with intent, knowledge, or reckless disregard of the substantial and unjustifiable risk that the object was a firearm, thereby committing the offense of Ownership or Possession Prohibited of Any Firearm or Ammunition by a Person Indicted for Certain Crimes, in violation of Section 134–7(b) and (h) of the Hawai'i Revised Statutes.

## II.

Prior to trial, Frazer moved to dismiss Count 2. The Circuit Court granted the motion, and on April 22, 2013, it issued its "Findings of Fact, Conclusions of Law and Order Granting Defendant's Motion to Dismiss Count II of Indictment" (Dismissal Order). In its Dismissal Order, the Circuit Court referred to the grant of a conditional discharge, deferral of the proceedings, and placement on probation under HRS § 712–1255 as being "sentenced" to a "conditional discharge" under HRS § 712–1255. It ruled that a person who has been granted a conditional discharge and "sentenced" to a period of probation under HRS § 712–1255 is neither a convicted felon nor under indictment.

The Circuit Court interpreted the phrase "under indictment" as used in HRS § 134–7(b) to refer to the pre-trial status of a defendant pending trial. The Circuit Court noted that in order for a court to grant a conditional discharge and place a defendant on probation under HRS § 712–1255, the defendant must already have pleaded guilty or been found guilty at trial. The Circuit Court concluded that because a defendant, like Frazer, who is granted a conditional discharge and is serving a probationary term is no longer pending trial, such defendant is not "under indictment" and cannot be charged with possessing a firearm while under indictment.

The Circuit Court's pertinent findings of fact and conclusions of law were as follows:

### FINDINGS OF FACT

. . . .

6. The term "under indictment" as used in HRS 134–7(b) refers to the pre-trial status of a Defendant who is pending trial.

7. "Under Indictment" does not extend to individuals who have been sentenced to a Conditional Discharge.

8. The Defendant, Michael Frazer, was still on Conditional Discharge status at the time of the indictment, and therefore he had already been sentenced and was no longer pending trial. He was no longer "under indictment."

. . . .

### CONCLUSIONS OF LAW

5. This court's interpretation of the plain meaning of "under indictment" is that it pertains to those defendants who are pending trial. A defendant who has already been sentenced is not 'under indictment.'

. . . .

7. As provided for in HRS 712–1255, a defendant who has been sentenced to a Conditional Discharge is not a convicted felon <u>nor</u> is he or she still pending trial. A defendant who has been sen-

---

4. The record in Cr. No. 08–1–0354 was not made part of the record in this case. The Circuit Court relied upon the parties' representations of what

happened in Cr. No. 08–1–0354 in rendering its ruling in this case.

tenced to a Conditional Discharge has already either plead Guilty or No Contest, or could have even gone to trial. He or she is clearly no longer pending trial and therefore is no longer 'under indictment'.

8. The intent of the legislature in amending HRS 134–7(b) was to include this large class of people pending a felony trial, into the already existing groups of individuals who were prohibited from possessing firearms. Its intent was not to include people who had already been sentenced. HRS 134–7(b) already covered those individuals.

9. Should, however, the term 'under indictment' be deemed to be ambiguous, the Rule of Lenity would require that HRS 134–7(b) be strictly construed in favor of the accused and against the State. In the instant case, the Rule of Lenity would require that HRS 134–7(b) be strictly construed to apply to only those individuals pending trial and not the Defendant, an individual who had already been sentenced in 2009 to a Conditional Discharge. The Rule of Lenity requires the court to adopt a less expansive meaning over a more inclusive one. To hold otherwise would lead to absurd results.

10. The Defendant Michael Frazer, an individual who had been granted a Conditional Discharge under HRS 712–1255 in 2009, was not pending trial when he was indicted in the instant case on February 1, 2012 and therefore he was not 'under indictment.'

(Emphasis in original.)

In the alternative, the Circuit Court ruled that it would exercise its inherent powers under HRS 603–21.9(6) (1993)[5] to dismiss Count 2 because it did not believe the State could prove beyond a reasonable doubt at trial that Frazer at least recklessly disregarded the risk that he was under indictment when he allegedly possessed the firearm. The Circuit Court reasoned that "[i]f this court, after having been briefed and having researched the issue, doesn't believe that the Defendant was "under indictment" at the time he was indicted in the instant case and has ruled such; how could the State prove that the Defendant, a lay person with no legal background or training, knew or consciously disregarded that he was 'under indictment.' " Based on this reasoning, the Circuit Court concluded that Count 2 would not have survived Frazer's motion for judgment of acquittal at trial, and therefore, it was exercising "its inherent powers to promote justice" in dismissing Count.[6]

## DISCUSSION

The State appeals from the Dismissal Order. On appeal, the State argues that the Circuit Court erred in dismissing Count 2 because: (1) a defendant who is serving a probationary term on a conditional discharge granted pursuant to HRS § 712–1255 is "under indictment" and therefore Frazer was properly charged with possessing a firearm while under indictment; and (2) the Circuit Court overstepped its bounds in dismissing Count 2 based on its inherent powers.

As explained below, we conclude that Frazer was under indictment within the meaning of HRS § 134–7(b) while he was serving the five-year probationary term on his conditional discharge, and therefore, the Circuit Court erred in dismissing Count 2 based on its contrary conclusion that Frazer was not under indictment during this period. We also conclude that the Circuit Court abused its discretion in relying on its inherent powers to dismiss Count 2 before trial.

---

5. HRS 603–21.9(6) provides that the, circuit courts shall have power "[t]o make and award such judgments, decrees, orders, and mandates ... and do such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them."

6. Frazer went to trial and was found guilty on the first-degree terroristic threatening charged in Count 1. Frazer challenged his conviction on Count 1 in a separate appeal.

## I.

Our decision in this case turns on the interpretation of relevant statutes. Statutory interpretation is a question of law that is subject to de *novo* review. *Hawai'i Gov't Emps. Ass'n, AFSCME Local 152, AFL–CIO v. Lingle*, 124 Hawai'i 197, 201–202, 239 P.3d 1, 5–6 (2010). We are guided by the following principles in construing a statute:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

*Id.* at 202, 239 P.3d at 6 (internal block quote format and citation omitted). In determining legislative intent, the courts may resort to extrinsic aids including the legislative history of the statute. *Barnett v. State*, 91 Hawai'i 20, 31, 979 P.2d 1046,1057 (1999). "Where the words of a law are ambiguous," the court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." HRS § 1–15 (2009). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (2009).

## II.

### A.

Frazer was charged with violating HRS § 134–7(b), which provides:

No person <u>who is under indictment for,</u> or has waived indictment for, or has been bound over to the circuit court for, <u>or has been convicted in this State or elsewhere of having committed a felony,</u> or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

(Emphases added.)

As the Hawai'i Supreme Court stated in *State v. Rapozo*, 123 Hawai'i 329, 235 P.3d 325 (2010), HRS § 134–7(b) "reflects the determination by the legislature that the possession of firearms or ammunition by certain categories of people raises an unacceptable risk that those items will be used for unlawful purposes." *Rapozo*, 123 Hawai'i at 340, 235 P.3d at 336. The plain language of HRS § 134–7(b) extends the prohibition against possession of firearms beyond persons who have been convicted of a felony to persons who are only under indictment for a felony. Thus, the legislature has determined that persons who have only been charged by indictment with a felony, whose guilt has not been proven, present unacceptable risks that require prohibiting them from possessing firearms while their charges are pending. The legislative history of HRS § 134–7(b) also reveals repeated actions of the Legislature over time to "expand[ ] the scope of the statute by broadening the categories of both prohibited persons and prohibited items." *Id.* at 340, 235 P.3d at 336. We conclude that the language and legislative history of HRS § 134–7(b) demonstrate the Legislature's clear intent not only to prohibit convicted felons from possessing firearms, but to prohibit persons indicted for a felony from possessing firearms from the time the indictment is returned and continuing without interruption thereafter unless and until the charge is resolved by acquittal or dismissal.

### B.

The legislative history of HRS § 134–7(b), in pertinent part, is as follows. When the precursor of HRS § 134–7 was first enacted in 1927, the statute provided:

No person who has been convicted in this territory, or elsewhere, of having commit-

ted or attempted a crime of violence, shall own or have in his possession or under his control, a pistol or revolver.

1927 Sess. L., Act 206, § 4, at 209. Since that time, the statute has been amended numerous times to broaden its scope.

In 1971, the Legislature expanded the scope of HRS § 134-7(b) to include all convicted felons, and it imposed a mandatory minimum sentence for a violation of HRS § 134-7. 1971 Haw. Sess. Laws Act 78, § 1 at 196; *Rapozo*, 123 Hawai'i at 341, 235 P.3d at 337.[7] As described by the House Judiciary Committee, the purpose of the bill that added these provisions was "to amend the existing firearms laws so that they will be more effective in deterring and preventing the proliferation of crimes involving the illegal possession and use of firearms in the State of Hawai'i." H. Stand. Comm. Rep. No. 931, in 1971 House Journal, at 1102. As amended in 1971, HRS § 134-7(b) provided:

> No person who has been convicted in this State or elsewhere of having committed a felony or of the illegal use and possession or sale of any drug shall own or have in his possession or under his control any firearm or ammunition therefor.

1971 Haw. Sess. Laws Act 78, § 1 at 196.

In 1981, the Legislature expanded HRS § 134-7(b) to include persons "under indictment" for a felony and other specified offenses. As amended in 1981, HRS § 134-7(b) prohibited the ownership, possession, or control of firearms or ammunition by anyone "under indictment for ... having committed a felony, or any crime of violence, or of the illegal sale of any drug[.]" 1981 Haw. Sess. Laws Act 239, § 5 at 465. The Legislature indicated that the purpose of the bill contain-

ing the 1981 amendment was "to restrict and control the acquisition and possession of firearms[,]" H. Stand. Comm. Rep. No. 727, in 1981 House Journal, at 1241, and the Legislature recognized that the bill would "assist the police in stemming the rising rate of violent crimes involving the use of firearms, by having more stringent procedures for the identification, acquisition, and possession of firearms." Conf. Comm. Rep. No. 48, in 1981 House Journal, at 921.

Subsequent amendments further extended the scope of HRS § 134-7(b) to include in 1982, any person who "has waived indictment" for a felony and other specified offenses, 1982 Haw. Sess. Laws Act 140, § 1 at 229, and to include in 1993, any person who "has been bound over to the circuit court" for a felony and other specified offenses. 1993 Haw. Sess. Laws Act 215, § 1 at 380. Thus, the legislative history of HRS § 134-7(b) clearly shows a strong and consistent legislative intent to expand the scope of those prohibited from possessing firearms in order to prevent and deter crimes committed with firearms and thereby protect the public. *See Rapozo*, 123 Hawai'i at 340-41, 235 P.3d at 336-37.[8]

### C.

In its current formulation, which is applicable to this case, HRS § 134-7(b) prohibits the following categories of people from possessing firearms or ammunition: persons who have been convicted of, as well as persons who are under indictment for, have waived indictment for, or have been bound over to the circuit court for, a felony, any crime of violence, or an illegal sale of any

---

7. In 1975, the mandatory minimum sentencing provision was removed and the maximum penalty for violation of HRS § 134-7 was increased from two years to five years. *See Rapozo*, 123 Hawai'i at 341 n. 8, 235 P.3d at 337 n. 8.

8. This legislative intent is also shown by amendments made to provisions of HRS § 134-7 besides HRS § 134-7(b). For example, in 1990, the Legislature amended HRS § 134-7 to add subsection (d) to prohibit persons who have, as minors, been adjudicated by the family court to have committed a felony, two or more crimes of violence, or an illegal sale of any drug from owning, possessing, or controlling a firearm or

ammunition until they reach the age of twenty-five. 1990 Haw. Sess. Laws Act 191, § 1 at 419. In its report on the bill that added subsection (d), the Senate Committee on Judiciary stated: "Given the increase in the number of youth gangs and the related increases in violence and drug trafficking, it is in the interest of the community that all those persons with propensity to commit crimes of violence, crimes involving the sales of drugs, and felonies be prohibited from possession or ownership of a firearm." H. Stand. Comm. Rep. No. 1220-90, in 1990 House Journal, at 1324.

drug. By expanding the scope of HRS § 134–7(b) to prohibit persons who are under felony indictment from possessing a firearm, the Legislature has determined that a person charged by indictment with a felony presents a risk of harm that is too great to permit that person to possess a firearm. The Legislature has therefore established that the filing of the felony indictment itself, before the felony charge has been proven, as the point at which the risks associated with the possession of a firearm become unacceptable. If the risks of firearm possession become unacceptable upon the filing of a felony indictment, these unacceptable risks certainly continue while the felony charge in the indictment remains pending and until it is resolved by acquittal or dismissal.

Given the language of HRS § 134–7(b) and its spirit and purpose as revealed by its legislative history, it is clear that for a person, like Frazer, who is indicted on a felony, HRS § 134–7(b) prohibits such person from possessing a firearm for the full continuum of time that begins with the indictment and continues while the felony charge is pending and until the charge is resolved by conviction, acquittal, or dismissal. If the person is convicted, the prohibition against possessing a firearm continues based on the person's status as a convicted felon. Only if the person's charge is resolved by acquittal or dismissal does the prohibition against possessing a firearm, which began upon the person's felony indictment, come to an end.

### III.

#### A.

Although the application of HRS § 134–7(b) is normally straightforward, Frazer's status as a person serving a probationary term on a conditional discharge pursuant to HRS § 712–1255 at the time he allegedly possessed a firearm presents issues not typically found in an HRS § 134–7(b) prosecution. In particular, we must determine whether a person serving a probationary term on a conditional discharge falls within the categories of persons prohibited from possessing a firearm under HRS § 134–7(b), and if so, which category.

Frazer was not charged with being a convicted felon in possession of a firearm, but only with possessing a firearm while under indictment for a felony. We first examine whether Frazer had the status of a person "convicted" of a felony within the meaning of HRS § 134–7(b) at the time he allegedly possessed the firearm charged in Count 2. The Hawai'i Supreme Court has stated that:

> The meaning of the term "convicted" or "conviction" varies according to the context in which it appears and the purpose to which it relates. The word "conviction" is more commonly used and understood to mean a verdict of guilty or a plea of guilty. The more technical definition includes the judgment or sentence rendered pursuant to an ascertainment of guilt. Use of the term "conviction" in a statute presents a question of legislative intent.

*State v. Akana*, 68 Haw. 164, 166–67, 706 P.2d 1300, 1303 (1985) (citations omitted). In *Akana*, the supreme court construed the meaning of the term "convicted" as used in a statute requiring the revocation of probation for a defendant who is "convicted of a felony." *Id.* at 165 n. 1, 167, 706 P.2d at 1302 n. 1, 1303. The court held that in this context, the term "convicted" meant the "ascertainment of guilt by guilty plea, or by verdict, and does not mean a judgment of conviction[.]" *Id.* at 167, 706 P.2d at 1303. The court reached this conclusion in light of the Legislature's determination, in enacting the probation revocation provision, that "a defendant who commits a felony while on probation is no longer deserving of freedom" or amenable to rehabilitation and the Legislature's deep concern over a probationer committing a felony during his or her period of probation, as shown by its amending the statute in 1980 to mandate revocation in this situation. *Id.*

Given the purpose of HRS § 134–7(b) to protect the public, it would appear that the broader, more commonly used meaning of "conviction" as a verdict of guilty or plea of guilty and "convicted" as an ascertainment of guilt by guilty verdict or guilty plea should apply to HRS § 134–7(b). *See id.* at 166–67, 706 P.2d at 1303; *United States v. Faison*, 61 F.3d 22, 23 (11th Cir.1995) (holding that a

jury verdict of guilty constitutes a conviction for purposes of the federal firearms statute and therefore the defendant was "convicted" of a felony during the interval between the jury's return of its guilty verdict and his scheduled sentencing); *United States v. Bennett*, 285 F.Supp.2d 978, 986 (E.D.Mich.2003) (same). Because the Legislature extended the scope of HRS § 134–7(b) in 1981 to include a defendant under indictment, the question of whether a defendant should be considered "convicted" between the time of a guilty verdict or guilty plea and sentencing does not affect the applicability of the statute—if the defendant is not considered "convicted" during this time, he or she would certainly be considered to remain "under indictment." The Legislature clearly could not have intended that a guilty verdict or guilty plea would extinguish the prohibition against the defendant's possession of a firearm or ammunition. We conclude that in the normal case, i.e., a case in which a conditional discharge or deferred acceptance of guilty plea is not granted, a defendant who pleads guilty or is found guilty at trial has been convicted for purposes of HRS § 134–7(b).

### B.

We read the Hawai'i Supreme Court's decision in *Ritte* as carving out an exception to the normal case for defendants whose adjudication of guilt is deferred pursuant to HRS § 853–1 or HRS § 712–1255. In 1979, Ritte was granted a deferred acceptance of guilty (DAG) plea pursuant to HRS § 853–1 on a felony charge and placed on probation. *Ritte*, 68 Haw. at 255, 710 P.2d at 1200. While still on probation for his DAG plea, Ritte allegedly possessed firearms and ammunition in 1983, which formed the basis for the State charging him with violating HRS § 134–7(b). *Id.* at 254–55, 710 P.2d at 1199–1200. When Ritte's DAG plea was entered in 1979, HRS § 134–7(b) prohibited persons convicted of a felony from possessing firearms or ammunition, but persons under indictment for a felony were not prohibited from possessing firearms or ammunition until the statute was amended in 1981. *Id.* at 255–56, 710 P.2d at 1200. The Hawai'i Supreme Court held that "a DAG plea is not a conviction" and therefore Ritte could not be

charged with violating HRS § 134–7(b) as a convicted felon. *Id.* at 255, 710 P.2d at 1200.

The supreme court then examined the savings clause for the Act which contained the 1981 amendment to HRS § 134–7(b). The savings clause provided that the Act would take effect upon its approval and would not affect "any proceedings which were begun" before its effective date, which was June 24, 1981. *Id.* at 256, 710 P.2d at 1200. The court held that because Ritte was under a DAG proceeding begun in 1979 before the effective date of the 1981 amendment, the 1981 amendment which extended the scope of HRS § 134–7(b) to those "under indictment" for a felony did not apply to Ritte. *Id.* The court therefore reversed Ritte's conviction for violating HRS § 134–7(b). *Id.*

### C.

■ Based on *Ritte*'s holding that a person on probation pursuant to the granting of a DAG plea under HRS § 853–1 is not a "convicted" person for purposes of HRS § 134–7(b), we conclude that a person on probation pursuant to the granting of a conditional discharge under HRS § 712–1255 is also not a convicted person.

The purpose and effect of HRS § 712–1255 and HRS § 853–1 are very similar. Both statutes permit a defendant who has pleaded guilty to seek a deferral of further proceedings, and both statutes enable a trial court, without entering a judgment of guilt, to defer further proceedings' and place the defendant on conditions of probation. Both statutes provide that if the defendant successfully completes the term of probation, the defendant will be discharged, the proceedings against the defendant will be dismissed, and the defendant will not have a conviction. Given both statutes' similar purpose and effect, it would be anomalous to treat a defendant granted a deferral under one statute differently than a defendant granted a deferral under the other statute. Based on *Ritte*, we conclude that a defendant, like Frazer, who is on probation pursuant to a conditional discharge granted under HRS § 712–1255 is not a convicted person for purposes of HRS § 134–7(b).

## IV.

The question then becomes whether a defendant on probation pursuant to a conditional discharge on an indicted felony is "under indictment" within the meaning of HRS § 134–7(b). Both the State and Frazer appear to interpret the Hawai'i Supreme Court's discussion on the effect of the savings clause in *Ritte* to mean that the supreme court concluded that a person on probation under a DAG plea for an indicted felony is under indictment within the meaning of HRS § 134–7(b).[9] While the supreme court's discussion could be read in that fashion, the supreme court did not specifically decide this issue in *Ritte*. Accordingly, *Ritte* is not dispositive. As explained below, we conclude that Frazer was under indictment while he was serving the probationary period imposed on his conditional discharge.

The language of both HRS § 712–1255 and HRS § 853–1 establish that the charge remains pending until the defendant successfully completes the term of probation imposed pursuant to the grant of a conditional discharge or deferred acceptance. Both statutes provide that the proceedings are deferred (and not terminated or ended) when the court grants a conditional discharge or a deferred acceptance and places the defendant on probation. The pending, non-final nature of the deferral granted under these statutes is further shown by Hawai'i Supreme Court decisions holding that the entry of an order granting a conditional discharge or a deferred acceptance and placing the defendant on probation is not a sentence or a final disposition of the case that can be appealed as a final judgment. *See State v. Bikle*, 60 Haw. 576, 580, 592 P.2d 832, 834–35 (1979); *State v. Kealaiki*, 95 Hawai'i 309, 312–13, 22 P.3d 588, 591–92 (2001).

Both HRS § 712–1255 and HRS § 853–1 also provide that a defendant is not discharged and the proceedings against the defendant are not dismissed until the defendant successfully completes the term of probation imposed. HRS § 712–1255(2) provides that "[u]pon fulfillment of the terms and conditions [of probation], the court shall discharge the person and dismiss the proceedings against the person." HRS § 853–1(c) states that "[u]pon the defendant's completion of the period designated by the court and in compliance with the terms and conditions established, the court shall discharge the defendant and dismiss the charge against the defendant."[10]

Because the conditional discharge granted to Frazer did not extinguish his indicted felony charge but only deferred the proceedings, and because Frazer's charge remained pending while he was serving his probationary term, we conclude that Frazer was under indictment within the meaning of HRS § 134–7(b) while he was serving the probationary term on his conditional discharge. Therefore, Frazer was under indictment when he allegedly possessed the firearm as charged in Count 2.

The conclusion that Frazer was under indictment within the meaning of HRS § 134–7(b) is also compelled by the spirit and purpose of the statute and its legislative history. As discussed, the legislative history of HRS § 134–7(b) reflects the Legislature's clear purpose to increasingly expand the scope of the statute to protect the public and its recognition that "the possession of firearms or ammunition by certain categories of people raises an unacceptable risk that those items will be used for unlawful purposes." *See Rapozo*, 123 Hawai'i at 340, 235 P.3d at 336. In 1981, the Legislature extended the statute's prohibition to a defendant under indictment for a felony. By doing so, the Legislature expressed its clear intent that all individuals under indictment for a felony, a group that includes individuals clothed with a presumption of innocence

---

9. In his brief, Frazer states that "[t]he *Ritte* court concluded that defendant Ritte's DAG status at the time [he allegedly possessed the firearms and ammunition] rendered him 'under indictment' for HRS § 147–7(b) purposes." (Footnote omitted.) Frazer, however, then argues that this *Ritte* court conclusion was wrong and should be revisited.

10. Under both statutes, if the defendant fails to comply with the terms of probation, the court may revoke the deferral and continue with the proceedings by entering an adjudication of guilt. *See* HRS § 712–1255(1); HRS § 853–3 (2014).

who have not admitted their guilt or been found guilty, presented an unacceptable risk and thus were prohibited from possessing a firearm or ammunition.

If the Legislature believed that it was too dangerous to permit a defendant under indictment for a felony who had not pleaded guilty or been found guilty to possess a firearm, it is difficult to see why the Legislature would intend that the grant of a conditional discharge and imposition of a probationary term, which can only be ordered after a defendant pleads guilty or is found guilty, would extinguish the prohibition against possessing a firearm. A defendant granted a conditional discharge and placed on probation is not acquitted, but is subject to terms and conditions of probation. Stated another way, if a person with a pending and unproven felony indictment charge is prohibited from possessing a firearm, then a person whose charge remains pending while he or she is serving the probationary term of a conditional discharge after pleading guilty or being found guilty must also be prohibited from possessing a firearm.

■ For these reasons, we conclude that Frazer was under indictment while he was on probation pursuant to his conditional discharge.[11] The Circuit Court erred in dismissing Count 2 on the ground that Frazer was not under indictment as alleged in that Count.[12]

### V.

■ The Circuit Court invoked its inherent power as an alternative basis for dismissing Count 2. We conclude that the Circuit Court abused its discretion in doing so.

The Hawaiʻi Supreme Court has held that in the absence of prosecutorial misconduct, a trial court does not have the inherent power to dismiss an otherwise valid indictment prior to a defendant's first trial. *State v. Alvey*, 67 Haw. 49, 57–58, 678 P.2d 5, 10–11 (1984). Here, there was no allegation of prosecutorial misconduct. In addition, the Circuit Court did not determine that the indictment on Count 2 was invalid,[13] but rather invoked its inherent powers to dismiss Count 2 based on its belief that the State could not prove beyond a reasonable doubt at trial that Frazer at least recklessly disregarded the risk that he was under indictment when he allegedly possessed the firearm.

However, the Circuit Court dismissed Count 2 without giving the State the opportunity to present evidence to prove its case at trial, and it erroneously relied upon the standard of proof for trial in dismissing Count 2 before trial. *See State v. Freedle*, 1 Haw. App. 396, 400, 620 P.2d 740, 743 (1980). Under the existing record and without knowing the full extent of the evidence that the State may be able to introduce at trial, we cannot say that the State will be unable to prove that Frazer had at least a reckless state of mind as to whether he was under indictment when he allegedly possessed the firearm as charged in Count 2. Based on the foregoing, we conclude that the Circuit Court abused its discretion in invoking its inherent powers to dismiss Count 2 before trial.

In rendering its ruling in this case, the Circuit Court expressed the view that the State could not prove its case beyond a reasonable doubt at trial and that the Circuit Court would have granted a judgment of

---

11. Courts from other jurisdictions have held that defendants subject to deferred proceedings similar to that provided under HRS § 712–1255 were under indictment for purposes of firearms statutes. *See United States v. Saiz*, 797 F.3d 853, 854–56 (10th Cir.2015), *cert. denied*, —— U.S. ——, 136 S.Ct. 1451, 194 L.Ed.2d 556 (2016); *United States v. Valentine*, 401 F.3d 609, 616 (5th Cir.2005); *Maldonado–Mejia v. Commonwealth*, 287 Va. 49, 752 S.E.2d 833, 836 (2014).

12. We note that the Circuit Court cited the rule of lenity in support of its ruling. However, the rule of lenity is applicable where the statutory language is ambiguous and there is no guidance

regarding the Legislature's intent. *State v. Kaakimaka*, 84 Hawaiʻi 280, 292, 933 P.2d 617, 629 (1997); *United States v. Choice*, 201 F.3d 837, 840 (6th Cir.2000) (concluding that the rule of lenity is applicable "[i]f the statute remains ambiguous after consideration of its plain meaning, structure, and legislative history"). As revealed by our analysis, the conditions necessary for the application of the rule of lenity are not present in this case.

13. The State presented evidence in the grand jury that Frazer possessed a firearm while he was under indictment.

acquittal if the case had proceeded to trial. In light of these circumstances, we conclude that it would be advisable for the case to be assigned to a different judge on remand.

## CONCLUSION

For the foregoing reasons, we vacate the Dismissal Order, and we remand the case for further proceedings, before a different judge, consistent with this Opinion.