**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1737-17T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TYRONE K. LARKINS, a/k/a
TYRONE Q. LARKINS,

    Defendant-Appellant.

_____

> Submitted December 10, 2018 – Decided December 26, 2018
>
> Before Judges Sabatino and Haas.
>
> On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 17-02-0578.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Rebecca L. Gindi, Assistant Deputy Public Defender, of counsel and on the brief).
>
> Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Tyrone K. Larkins appeals the trial court's denial of his motion to suppress a handgun officers seized from a bedroom closet in his girlfriend's apartment after arresting him there for parole violations. For the reasons that follow, we affirm the ruling in part but remand the case – with the State's acquiescence – to develop the record further concerning additional issues that bear upon the legality of the gun's seizure.

The search took place on the morning of December 16, 2016, when six parole officers went to the girlfriend's apartment building in Orange. The officers were looking for defendant, having a warrant for his arrest issued by the Parole Board. The officers encountered the girlfriend leaving the building as she was heading off to work. The officers told her they had come to arrest defendant. She confirmed he was upstairs in her apartment. The officers asked the girlfriend if she would be willing to consent to a search of her apartment for the purpose of apprehending defendant. The girlfriend signed a consent form authorizing that search, although the timing and voluntariness of that consent was a key disputed issue.

The girlfriend and the officers went upstairs, and the officers opened the door to the apartment with keys the girlfriend provided. The officers entered the unit, found defendant sleeping in a bedroom, and arrested him. One officer

then went into a closet, allegedly to retrieve a sweatshirt for defendant to wear outside in the cold. The officer spotted a gun in the closet, and seized it.

The State asserted at the suppression hearing that the officers obtained the girlfriend's valid consent to enter and search the apartment, as reflected on a consent form she signed. In response, defendant argued the officers coerced his girlfriend's consent by making threats to her. Defendant also maintained that the girlfriend did not sign the form until after the officers had already entered and searched the premises.

After considering divergent testimony from the girlfriend and from a senior parole officer who took part in the search, the trial court concluded the officer's account was more credible. Consequently, the court found the girlfriend's consent was voluntary, and denied the suppression motion.

Defendant thereafter entered into an agreement with the State and pled guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). By doing so, defendant preserved his right under Rule 3:5-7(d) to appeal the suppression ruling. In accordance with the plea agreement, the trial court sentenced defendant to a seven-year prison term with a forty-two-month parole ineligibility period.

On appeal, defendant presents the following arguments in his brief:

A-1737-17T1

POINT I

THE TRIAL COURT ERRED IN FINDING THAT
THE STATE MET ITS BURDEN OF PROVING
THAT THE SEARCH WAS JUSTIFIED BY [THE
GIRLFRIEND'S] VALID CONSENT.  BECAUSE
POLICE EXCEEDED THE SCOPE OF [THE
GIRLFRIEND'S] CONSENT, THE GUN MUST BE
SUPPRESSED.

A. Introduction.

B. The Trial Court's Decision Is Not Legally Correct
Because It Fails To Analyze Whether The Search
Exceeded The Scope Of [The Girlfriend's] Consent.

C. The Record Clearly Illustrates That The Search Far
Exceeded The Scope Of [The Girlfriend's] Consent.

In reviewing the trial court's suppression ruling and the record from the evidentiary hearing, we afford considerable deference to the court's role as a fact-finder.  Our review of the court's factual findings is "exceedingly narrow." State v. Locurto, 157 N.J. 463, 470 (1999).  We must defer to those factual findings "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015).  As part of that deference, we particularly respect the court's assessments of credibility, given the court's ability to have made "observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." Locurto, 157 N.J. at 474.  However, we owe no deference to the trial judge's conclusions

4                                                    A-1737-17T1

of law.  See State v. Hinton, 216 N.J. 211, 228 (2013).  Nor are we "obliged to defer to clearly mistaken findings . . . that are not supported by sufficient credible evidence in the record."  State v. Gibson, 218 N.J. 277, 294 (2014).

Applying these well-established standards of review, we affirm the trial court's finding that the girlfriend, despite her claims of coercion, voluntarily consented to allowing the officers to enter the apartment and search the premises for defendant.

The court detailed in its oral opinion ample reasons for finding the senior parole officer's testimony more credible than the girlfriend's account, including those witnesses' comparative demeanor and the believability of their narratives. We will not second-guess those credibility findings.  Locurto, 157 N.J. at 474. Hence, we affirm the court's determination of voluntary consent.

The consent of a third party who has authority over the place being searched, such as the girlfriend here, satisfies a recognized exception to the general constitutional requirement for police officers to obtain a search warrant. See State v. Suazo, 133 N.J. 315, 320 (1993); see also State v. Pante, 325 N.J. Super. 336, 350 (App. Div. 1999).

That said, defendant has raised an additional concern that requires closer scrutiny; namely, whether the officers' search exceeded the scope of consent by

delving into the closet and removing a gun after defendant had already been arrested.

As the State's brief candidly acknowledges, the arrest warrant and the consent to search form did not authorize the officers to search "every inch" of the apartment. Even where consent to search has been voluntarily provided, the search that is actually conducted may be unconstitutional if the scope of the consent is exceeded. See Florida v. Jimeno, 500 U.S. 248, 251 (1991); see also State v. Younger, 305 N.J. Super. 250, 256 (App. Div. 1997).

Here, the scope issue was not developed in the record at the suppression hearing. At the outset of the hearing, in response to a query from the prosecutor, the court instructed that the sole focus of the hearing would be restricted to the disputed validity of the consent to search. When defense counsel later attempted to cross-examine the testifying officer about a possible deviation from the permitted scope of the search, the prosecutor objected and the court sustained the objection.

The parties were not afforded a mutual chance at the hearing to adduce facts bearing on the scope issue. If that subject had been allowed to be explored, the State asserts that it would have presented proof, as indicated in the police report, that one of the officers went into the closet at the request of defendant to

retrieve a sweatshirt for him as he was getting dressed to go outside. According to the report, while the officer was doing so, he observed in plain view the butt of a gun protruding from a shelf, and confiscated it. See State v. Gonzales, 227 N.J. 77, 91-101 (2016) (delineating the current elements of the plain view doctrine). The officer who discovered the gun did not testify at the hearing and was not subjected to cross-examination.

In its brief, the State advises it is amenable to a limited remand to develop in the trial court a "robust" record on these unresolved issues. We agree that such a remand is appropriate.

We reject defendant's contention that the State has waived the opportunity to rely on the "plain view" doctrine. The justification closely relates to the scope issues defendant wanted to explore at the suppression hearing but was not allowed to develop. Had that exploration occurred, the State surely would have invoked a plain view justification to counter the defense's claim that the officers exceeded the bounds of the consent to search.

Among other things, the trial court on remand may consider supplemental testimony about whether the officer who went into the bedroom closet had a right to be standing there, whether defendant had indeed requested the officer to

retrieve a sweatshirt for him, whether the gun on the shelf actually was in plain view, and other credibility-laden matters.

The remand shall be completed in ninety days, unless both parties agree to an extension of that deadline. In the meantime, defendant's conviction and sentence remain unaltered.

If, hypothetically, the trial court determines on remand that the officer's seizure of the gun from the closet exceeded the scope of the girlfriend's consent and was not in plain view from a lawful spot, the trial court must afford defendant an opportunity to move to withdraw his negotiated plea. On the other hand, if the court concludes that the search of the closet and the seizure of the gun were lawful, the judgment of conviction will continue in force. Both parties preserve the right to pursue timely post-remand appellate review.

Affirmed in part, remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1737-17T1